EMPIRE DEVELOPMENT COMPANY et al., Appellants, *v.* TITLE GUARANTEE AND TRUST COMPANY, Respondent.

**Title guaranty — when vendee who at time of execution of contract of sale knew of defect in title cannot recover against drawer of contract and of subsequent deed for failure to protect him — policy of insurance may define "loss" intended to be covered — when owner of real property may insure himself against defects in title of which he had knowledge — when dismissal of counterclaim pleading facts which would entitle insurer to reformation of policy is error.**

1. Where, in an action to recover for the alleged negligence of defendant, a title guarantee company, for error in drawing a contract for the purchase of real property and the subsequent deed, whereby the plaintiff, its employer, became liable to pay certain assessments, it appears by uncontradicted evidence that at the time the contract of sale was made the plaintiff knew of the assessments, the complaint is properly dismissed, since, knowing the facts, the negligence of the defendant, if there was any, in no way injured the plaintiff.

2. While every policy of insurance is so far a contract of indemnity that the insured must possess an insurable interest and that wagers are prohibited, there is no fundamental objection to definition between the parties to an insurance contract of the loss which they intend to cover, so long as it is made in good faith and not as merely the cover of a wager.

3. The words " loss or damage " in a policy insuring the owner of real property against loss by reason of defective title thereto and

other incumbrances thereon can only mean damages caused to the owner by an existing defect in the title. Hence, it is error to dismiss the complaint in an action against the insurer to recover the amount of assessments paid by the insured because the latter knew that at the time title passed and the policy was dated the lien of such assessments had been perfected. Against the payment of these liens the owners had a right to secure themselves and the mere knowledge by them of the defect did not constitute a defense.

4. Where, however, undisputed evidence shows that both parties knew of the assessment and that the issuance of the policy was delayed and an agreement made that the particular assessment should not be excepted from the policy because of the promise of the plaintiffs that they would pay the same and have it canceled and thereafter the assessment was paid by the plaintiffs and the policy was issued but its date was given as before the payment, the defendant is entitled to a reformation of the policy so as to relieve it from paying this particular assessment, and where such a defense was pleaded as a counterclaim its dismissal was error.

*Empire Development Co.* v. *Title Guarantee & Trust Co.*, 171 App. Div. 116, reversed.

(Argued October 31, 1918; decided December 10, 1918.)

APPEAL from a judgment, entered January 24, 1916, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiffs entered upon a verdict directed by the court and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Joab H. Banton* and *John E. Roeser* for appellants. The defendant was not entitled to a reformation of the contract. (*Levy* v. *Louvre Realty Co.*, 222 N. Y. 14; *City of New York* v. *Matthews*, 213 N. Y. 563; *Southard* v. *Curley*, 134 N. Y. 148; *A. B. Co.* v. *Allison*, 144 N. Y. 21; *C. S. R. Co.* v. *T. T. S. Ry. Co.*, 149 N. Y. 51.) It was not error for the trial court to dismiss its counter-

claim asking for reformation, and direct a verdict in favor of the plaintiffs. (*Cannon* v. *Fargo*, 222 N. Y. 321; *B. P. Co.* v. *Reinhardt*, 210 N. Y. 162; *City of New York* v. *Matthews*, 213 N. Y. 563.)   The judgment of the Appellate Division should be reversed and that of the Trial Term affirmed. (*El Paso & S. W. R. Co.* v. *Eichel & Weinkel*, 226 U. S. 591; Anson on Contracts [Huffcut's ed.], 376, § 390; *Trenton Potteries Co.* v. *Title G. & T. Co.*, 50 App. Div. 490; 176 N. Y. 65; *Pearsall* v. *L. T. Guarantee Co.*, 94 Mo. App. 5, 13; *Minn. Title Ins. Co.* v. *Drexel*, 70 Fed. Rep. 194, 198; *Foehrenbach* v. *G. A. T. & T. Co.*, 217 Penn. St. 331; *Ehmer* v. *Title G. & T. Co.*, 156 N. Y. 10; *Economy Building & Loan Assn.* v. *West Jersey Title Co.*, 64 N. J. L. 27, 28.)

*Harold Swain* and *Archer P. Cram* for respondent. The plaintiffs have suffered no loss or damage within the meaning of the policy. (*Trenton Potteries Co.* v. *Title G. & T. Co.*, 176 N. Y. 65; *Palatine Ins. Co.* v. *O'Brien*, 68 Atl. Rep. 484.) If the policy, as drawn, imports liability by reason of the assessments in question, then it did not correctly set forth the contract made, and should have been reformed accordingly. (*Taylor* v. *Bowen*, 52 App. Div. 126; *Pennsylvania Steel Co.* v. *Title G. & T. Co.*, 193 N. Y. 37, 45; *Trenton Potteries Co.* v. *Title G. & T. Co.*, 176 N. Y. 65.) The plaintiffs failed to establish any negligence on the part of the defendant. (*Livingston* v. *Spero*, 18 Misc. Rep. 243.)

ANDREWS, J.   The complaint sets forth two causes of action.   By the first it is alleged that the defendant issued a policy of title insurance to the plaintiffs covering certain premises conveyed to them at that time; that upon said premises at the date of the policy assessments, not excepted in the policy itself, were a lien; that these assessments, amounting to over $6,000, were paid by

the plaintiffs and that they sustained a loss in that amount with interest. By the second cause of action it is alleged that the plaintiffs were negotiating for the purchase of the premises described; that the defendant agreed to represent the plaintiffs in the transaction and to safeguard their interests as an attorney would do; to take charge of the matter of the purchase; to advise, guide and direct the plaintiffs and then to insure their title. Because of the negligence of the defendant the contract and deed were not properly drawn and the plaintiffs became liable to the vendors to pay the assessments above mentioned and thereby sustained the losses mentioned in the first cause of action.

At the close of the evidence motions were made by both parties for the direction of a verdict. The trial court directed a verdict for the plaintiffs. Thereupon the defendant withdrew its motion and asked leave to submit the questions of fact involved in the case to the jury. This motion was denied as made too late. From the judgment in favor of the plaintiffs an appeal was taken to the Appellate Division. The Appellate Division reversed the judgment, not on the facts but solely upon questions of law and dismissed the complaint.

We must first determine whether there was any evidence in the case justifying a finding of the trial court in favor of the plaintiffs upon the second cause of action. Without discussing this question in detail it is enough to say that assuming the negligence of the defendant as claimed by the appellants, the uncontradicted evidence shows that the contract of sale between them and the vendors was made on February 13th, 1907. At this time the plaintiffs knew of the assessments. This evidence is not impeached in any way either by witnesses or by facts and circumstances. It may, therefore, be assumed to be true. Knowing the facts the negligence of the defendant, if there was negligence, in no way injured the plaintiffs.

Therefore, so far as this cause of action is concerned the result reached in the Appellate Division was right.

As to the first cause of action, the policy of insurance was executed and delivered to the plaintiffs after July 18th, 1907.   It was dated April 4th, 1907, the time when the title was closed and the deed taken.   The assessments became liens on February 27th.   They were paid by the plaintiffs on April 20th.   Concededly the issuance of this policy was part of the transaction relating to the purchase of the property.   In pursuance to the arrangement made between the parties the policy insured the plaintiffs against loss or damage which the insured should sustain by reason of any defect or defects of title affecting the premises or affecting the interest of the insured therein or by reason of the unmarketability of the title insured or by reason of liens and incumbrances charging the same at the date of the policy.

The theory of the Appellate Division was that the contract of sale made on February 13th, 1907, provided that the premises were to be taken subject to all assessments which became a lien on the premises after December 14th, 1906.   This assessment became a lien after that date.   The plaintiffs in their contract had agreed to pay it.   Therefore, when they in fact paid it they suffered no loss or damage.   They did simply what they had agreed to do.   The policy of insurance was an indemnity policy insuring them against loss or damage; and if they sustained none, as they did not in this case, there can be no recovery under it.

This conclusion raises the interesting and important question as to the nature of the usual contract for title insurance.   May the owner of land insure his existing title?   Or, because it is either good or bad; because in either event his situation is unchanged; because an insurance contract is said to be a contract of indemnity, is such a transaction an idle ceremony?   Is the legitimate

business of title insurance companies restricted practically
to those cases where an intending purchaser or mortgagee
completes the transaction in reliance upon the insurance
contract?

It has been said often that every policy of insurance
is a contract of indemnity. The accuracy of this state-
ment is a question of definition. If it means that wagers
are prohibited; that the insured must possess an insurable
interest, it is true to-day. But if the word " indemnity "
is given a broader sense; if it means that whatever the
language of the contract the insured may recover only
the precise amount of the pecuniary damage caused to
him by the contingency against which he seeks protection,
then it is not now and never has been the inflexible rule.
An ordinary fire or marine policy is a contract of
indemnity, for it is so written. (*Ferguson* v. *Mass.
M. L. Ins. Co.*, 32 Hun, 306; affirmed, 102 N. Y. 647.)
But valued policies of this character may also be written
and then, in the absence of fraud, the amount of the
loss is immaterial. (*Sturm* v. *Atlantic Mutual Ins.
Co.*, 63 N. Y. 77.) All life policies are substantially
valued policies. (*Olmsted* v. *Keyes*, 85 N. Y. 593;
*Rawls* v. *American Mutual Life Ins. Co.*, 27 N. Y. 282.)
A creditor whose debt has been paid after he has obtained
a policy on the life of his debtor may still recover.
(*Ferguson* v. *Mass. M. L. Ins. Co.*, *supra*.) As is said by
May in his work on Insurance, section 7: " When it
is said that fire, life or other insurances, where valued
policies obtain, are contracts of indemnity, it is simply
intended that to support them the insured must have
some interest in the thing insured. The amount of this
interest and the amount to be paid in case of loss may be
fixed by arbitrary agreement, even before the loss."

There is then no fundamental objection to definition
between the parties to an insurance contract of the loss
which they intend to cover, so long as it is made in good

faith and not as merely the cover of a wager.   The courts will not interfere.   Their function is limited to a construction of the contract.

What then is the meaning of the words " loss or damage " as used in the policy before us?   It may be observed at the outset that the corporation is authorized to insure the owners of real property and others interested against loss by reason of defective title thereto and other incumbrances thereon.   (Insurance Law [Cons. Laws, ch. 28], sec. 170.)   This would seem to contemplate the insurance of an existing title.   Loss in such a case can only be damages caused to the owner by an existing defect in the title.

We have already quoted the language of the policy. As the statute permitted, the owners are insured against loss by reason of defective title to or an incumbrance upon their property.   The policy itself defines what shall constitute a loss.   It arises where the insured has been evicted under a judgment of a competent court; where in such a court the existence of a lien or incumbrance has been declared; where, on a sale, the property proves to be unmarketable or where, because of some defect, a mortgage loan has failed.   The plaintiffs come precisely within one of these provisions.   In a competent court the existence and lien of these assessments has been declared.   Because under their contract the plaintiffs are compelled to pay them their loss is no less.   As is said in *Foehrenbach* v. *German-American Title & Trust Company* (217 Penn. St. 331) the word " loss " is a relative term.   Failure to keep what a man has or thinks he has is a loss.   What the word means is to be measured by the standard accepted between the parties.   As a help to our decision we may examine the purpose and object of the contract.   To a layman a search is a mystery and the various pitfalls that may beset his title are dreaded but unknown.   To avoid a possible claim against

him; to obviate the need and expense of professional advice, and the uncertainty that sometimes results even after it has been obtained is the very purpose for which the owner seeks insurance.   To say that 'when a defect subsequently develops he has lost nothing and, therefore, can recover nothing, is to misinterpret the intention both of the insured and the insurer.   In no sense is the contract a mere wager.   Such a contract so made and understood by the parties should be enforced.   A decision to the contrary would very materially diminish the business now carried on by title insurance corporations. Further this is the interpretation which the parties themselves have placed upon the contract.   The schedule of exceptions refers to a purchase-money mortgage executed by one of the plaintiffs; a reference not necessary if the construction given by the Appellate Division is to prevail. We think also that the conclusion we have reached is that generally accepted in practical business.   In at least two cases in other states under such circumstances a recovery has been permitted without the question being raised.   (*Minn. Title Ins. & Trust Co.* v. *Drexel,* 70 Fed. Rep. 194; *Purcell* v. *Land Title Guarantee Co.,* 94 Mo. App. 5.)   It seems to be assumed that loss or damage would be received when, because of a defect in the title, the insured was bound to pay something to make it good.   That is the present risk of loss inseparable to every contract of insurance.

If this be the general rule, it governs the case before us. The contract of February 13th provided that the plaintiffs should take the property subject to all assessments which became a lien after December 14th, 1906.   They knew of the proceedings pending as to the assessments in question and they knew when the title passed and the policy was dated that the lien had been perfected.   Yet it might be vacated or reduced.   The proceedings might be without jurisdiction or void.   Against the payment

of these liens they had the right to secure themselves. The result reached by the Appellate Division cannot be sustained except upon the theory adopted by that court, and that theory is dependent upon its construction of the word " loss." For mere knowledge of a defect by the insuring owner would not constitute a defense. A title insurance policy is much in the nature of a covenant of warranty or a covenant against incumbrances. Here we have held that knowledge is immaterial. We see no reason for applying a different rule as to such a policy.

Another question remains. The undisputed evidence shows, as we have said, that both parties knew of this assessment. It further shows that knowing of the assessment the issuance of the policy was delayed and an agreement was made that the particular assessment should not be excepted from the policy because of the promise of the plaintiffs that they would pay the same and have it canceled. Thereafter the assessment was paid by the plaintiffs and the policy was issued but its date was given as before the payment. Under these circumstances the defendant undoubtedly would be entitled to a reformation of the policy so that it might be relieved from paying this particular assessment. (*Trenton Potteries Company* v. *Title G. & T. Co.*, 176 N. Y. 65.) This defense was pleaded as a counterclaim. The difficulty of the situation is, however, that after the defendant had rested this counterclaim was dismissed by the trial court. Thereafter considerable rebuttal evidence was given and finally judgment was ordered for the plaintiffs. We may not assume that if the counterclaim had not been dismissed the plaintiffs could not have contradicted the evidence given as to their knowledge of the assessment in question; as to the arrangement for delaying the policy and as to the agreement under which this particular assessment was not to be excepted.

The action of the trial court in dismissing the counter-

claim to which we have referred was erroneous. Therefore, while the action of the Appellate Division in reversing the judgment below was correct, it should not have dismissed the complaint. The questions arising on the counterclaim should have been litigated.

The judgment of the Appellate Division should be reversed and the case should be sent back for a new trial, with costs to abide the event.

Hiscock, Ch. J., Chase, Collin, Cuddeback, Cardozo and Pound, JJ., concur.

Judgment reversed, etc.