HOLLY HOTEL COMPANY, Plaintiff, *v.* TITLE GUARANTEE AND TRUST COMPANY, Defendant.*

Supreme Court, New York County, February 19, 1932.

*Affd., 239 App. Div. 773.

*Olvany, Eisner & Donnelly* [*James F. Donnelly* of counsel], for the plaintiff.

*Clarence B. Plantz*, for the defendant.

GAVEGAN, J. This is an action upon a policy of title insurance issued by defendant to plaintiff in 1920 " against all loss or damage not exceeding twenty-six thousand dollars which the insured shall sustain by reason of any defect or defects of title affecting the premises " to which the insurance relates, or " affecting the interest of the insured therein  *  *  *  by reason of unmarketability of the title of the insured  *  *  *  or by reason of liens or encumbrances charging the same at the date of this policy; saving all loss and damage by reason of the estates, interests, defects, objections, liens and encumbrances excepted in Schedule B, or by the conditions of this policy  *  *  *  the loss and the amount to be ascertained in the manner provided in said conditions and to be payable upon compliance by the insured with the stipulation of said conditions and not otherwise." Schedule B provides: " This policy does not insure against such estates, interests, defects, objections to title, liens, charges and incumbrances affecting said premises, or the estate or interest insured, as are set forth below in this schedule." Then follow five exceptions, one reading: " 4. Restrictive covenants in instrument recorded in Liber 211 of Conveyances at page 13 in the office of the Register of the County of New York." The instrument mentioned in this exception is an old deed in the chain of title. After setting forth a covenant against nuisances, it provides against a breach of the covenant, in separate sentences: "And that said premises and every part thereof

shall forever remain and be subject to condition of the faithful performance of the above covenant last recited into whose possession soever they may come by devise, descent or alienation. And it is expressly understood and agreed by the parties to these presents that the above described premises and all the estate, right, title and interest therein and hereby granted and conveyed to said party of the second part, his heirs and assigns are held upon the condition that the said party of the second part, his heirs and assigns keep and perform the above covenant by him to be kept and performed and not otherwise." It is further provided that, on violation of' the covenant, " then this deed shall become void and all the estate, right, title and interest, of said party of the second part, his heirs and assigns in and to the premises hereinbefore described shall cease, determine and become vested in said parties of the first part, their heirs and assigns in same manner to every interest and purpose as if this deed had never been given."

On account of the condition so imposed upon the title, defendant, in 1930, would not insure a proposed mortgagee, an organization with which plaintiff had negotiated for a loan, unless the possibility of reversion was removed by procuring certain releases or quitclaim deeds. In order to obtain the loan, plaintiff procured the releases at an outlay of $4,729.05. This, plus $651.69, the interest on $50,000 deposited with defendant pending the recording of the releases, less certain interest received on the deposit of $50,000, constitutes the principal amount plaintiff now seeks to recover. Defendant asserts that in 1920 it insured subject to the condition that it insured the title which plaintiff actually had, and that in 1930 it was willing to insure the same title to the prospective mortgagee. Plaintiff's claim is that in 1920 defendant insured against the condition; and the principal question to be decided is whether the insurance policy of 1920 excepted the condition imposed by the old deed. It will be noted that defendant excepted " Restrictive covenants." While the exception as stated in the policy referred, by liber and page numbers, to the instrument of record containing the condition, the insurer did not, in stating the exception, refer to it as a condition.

Defendant relies upon *Stirn* v. *293 Avenue B Corporation* (224 App. Div. 458), in which it was sought to recover the down payment on a contract for the purchase of realty, the parties having stipulated in the contract that the sale was subject to covenants set forth in certain books of record. It was held, in effect, that a sale expressly made subject to a covenant is impliedly subject to the condition incidental to the failure to perform the covenant. Such an exception in a contract for the sale of realty puts the purchase

on notice as to the title the seller will convey. In the present case, however, the relationship between the parties is not that of seller and purchaser. Defendant assumed to examine and read the record title and to insure a good title excepting in so far as by its policy it qualified its obligation. Assuming it to be true that the provisions imposing a condition are an integral part of the covenant, we are not to conclude that defendant, in 1920, refused to insure against the condition. An insurer's exception to the general scope and purpose of the policy is to be given no wider effect than the language requires. The contract fairly indicated to plaintiff that defendant insured a fee simple subject to " restrictive covenants " for the violation of which an action at law or a suit in equity might be instituted. The wording of the fourth exception was such as to assure plaintiff that, though the use to which its land might be put could be questioned, its title could not be disturbed. A purchaser of title insurance may rely as any layman would rely on the language employed by the company to state or qualify the scope or extent of the protection sold. To ascertain the same, he is not called upon to have a lawyer construe an instrument of record excepted by the insurer as a covenant in order to see whether it is more than a covenant. In this connection neither notice nor knowledge is important. Plaintiff could assume that for reasons satisfactory to itself the insurer was willing to protect against the provisions of the instrument so far as they purport to impose a condition in addition to stating a covenant. In *Empire Development Co.* v. *Title Guarantee & Trust Co.* (225 N. Y. 53, at p. 61) it is said: " For mere knowledge of a defect by the insuring owner would not constitute a defense. A title insurance policy is much in the nature of a covenant of warranty or a covenant against incumbrances."

It is clear that defendant refused to insure to the mortgagee the same title which it had insured to plaintiff. Defendant also points to the provisions of the deed by which plaintiff took title; but for the statement of the insurer's obligations we look to the policy and not to that deed. The grantee seeks protection against defects in the title conveyed. The exceptions in the deed run in favor of the grantor. They are not for the benefit of the title company. For defendant it is further asserted there is no proof that the condition was ever of any effect so far as the title to the property is concerned, implying that the loss occasioned by defendant is not one for which recovery may be had in an action on the policy. This disregards the language of the contract, which purports to afford insurance against " any defect or defects of title * * * affecting the interests of the assured * * * by reason of liens or incumbrances." Here the defendant is in the same position as if

the mortgage loan had failed by reason of a defect against which it had insured. For a loss so caused, plaintiff may recover. (*Empire Development Co.* v. *Title Guarantee & Trust Co., supra*, at p. 59.)

A further question arises, however, on account of the provision that " the loss and the amount to be ascertained in the manner provided in said conditions and to be payable upon compliance by the assured with the stipulations of said conditions and not otherwise." The conditions read in part: " 2. * * * (VI) Where the insured shall have negotiated a loan on the security of a mortgage on an estate or interest in land insured by this policy, and the title shall have been rejected by the proposed lender, this company, if there is no dispute as to the facts, will consent to the submission of the question on the validity of the title, as insured, to the Appellate Division of the Supreme Court in the Judicial District in which is situated the property affected by this policy, if said property be in the State of New York." After the mortgage loan had been negotiated, defendant's position was that the original policy did not insure against the possibility of reversion. This position taken by the title company was the underlying cause of the loss. The stipulation for a submission to the Appellate Division requires a determination as to the title when it is questioned by a third person. Here we have nothing more than a question, originating with defendant itself, as to the meaning of its policy. Defendant claims that in 1920 it insured subject to the condition. The difference between the parties relates to the interpretation of the policy and not to the title. The court is not called upon to examine the title in any respect. The decision as to the meaning of the policy leaves nothing to submit to the Appellate Division.

There will be judgment for plaintiff. Settle order.