OPINION OF THE COURT
Joan B. Lefkowitz, J.
This case presents the interesting question whether the plaintiff insured’s agreement with its vendor to "pay all arrears in taxes” falls within the exclusionary language of the title insurance policy as "liens or incumbrances created, suffered, assumed or agreed to, by or with the privity of the *403 insured.” While there are several cases that discuss such items not covered by the title policy, the parties point to no authority on the precise question presented and extensive research has not located a decision directly in point.
The plaintiff, a partnership, entered into a contract to purchase certain real property for $135,000. The contract of sale is dated December 9, 1988. It acknowledges that one or more of the partners are real estate brokers. In paragraph 4 of the rider to the contract, it is stated: "The purchaser acknowledges that there are outstanding taxes, penalties and interest due and owing on the premises and purchaser agrees to pay all arrears in taxes plus all penalties and interest on same.”
Paragraph 10 of the rider covered the situation of returned checks after the closing for insufficient funds and the purchasers agreed to be responsible therefore for the balance of the purchase price and "tax adjustments”. Paragraph 10 survives delivery of the deed.
Thereafter, defendant caused a title search on the subject property and issued a certificate and report of title (the abstract) on January 1, 1989. The abstract revealed that a 1989 State, county and town tax as well as a 1988/1989 school tax in the total amount of $10,775.03 were open. Schedule B of the abstract excepts from coverage taxes, tax liens and assessments as set forth, i.e., the above-mentioned open taxes. At the closing on February 17, 1989 the aforementioned taxes were paid and such items of taxation were then omitted from the exceptions in the abstract. A title policy was issued by defendant as of February 17, 1989 in the amount of $135,000. Upon its issuance, the abstract by its terms became null and void.[1] Schedule B of the policy states that "excepted from the coverages of this policy” are "4. Judgments against the insured or estates, interests, defects, objections, liens or incumbrances created, suffered, assumed or agreed to, by or with the privity of the insured.” There is no specific exception for taxes or assessments in the standard language of schedule B or in the annexed rider thereto.
In fact, as of the date of issuance of the policy there existed a tax lien against the insured property for the 1988 State, county and town taxes, in the sum of $7,055,27. After defendant refused to pay same, plaintiff paid the amount due, *404 including interest, a total of $8,012.74, to satisfy said lien. Plaintiff then commenced the instant action for recovery of $8,012.74. The complaint consists of two causes of action: (1) the first is for breach of contract since defendant agreed to pay for defects to title or for liens not excepted in schedule B, and (2) for the amount of interest paid caused by the defendant’s alleged negligence in conducting the tax search. The defendant’s answer contains an affirmative defense that plaintiff assumed liability for the lien within the meaning of the exceptions set forth in schedule B of the policy.
On the eve of trial, defendant moves for summary judgment dismissing the complaint (CPLR 3212 [a]). The plaintiff requests "reverse summary judgment” (CPLR 3212 [b]).
The fact that a motion for summary judgment is made on the eve of trial is not a ground for denial where, as here, there appears to be merit for it or for the award of summary judgment to the nonmoving party. (Carvel Corp. v Burstein, 62 NY2d 638 [1984], affg on mem below 99 AD2d 935 [2d Dept 1984]; Kule Resources v Reliance Group, 49 NY2d 587 [1980].)
Statutorily, title insurance has been defined (Insurance Law § 1113 [a] [18]): "(18) 'Title insurance,’ means insuring owners of, and other persons lawfully interested in, real property and chattels real against loss by reason of defective titles and encumbrances and insuring the correctness of searches for all instruments, liens or charges affecting the title to such property, including power to procure and furnish information relative thereto, and such other incidental powers as are specifically granted in this chapter.” (See also, Insurance Law § 6401 [b].) Title policies usually specify the name of the insured, the amount of insurance, a description of the real property, the interest insured, an insuring clause, a schedule B for exceptions not covered, and other provisions as to notice of claim, defense of suits, subrogation rights, etc. (7 Powell, Real Property fl 1030.) A uniform title policy has been prepared by the American Land Title Association which has been adopted in 47 States. Three States (California, Texas and New York) use their own version of that form. (Id., [f 1033.)
Title policies are contracts of indemnity. (Smirlock Realty Corp. v Title Guar. Co., 52 NY2d 179 [1981], on remand 97 AD2d 208 [2d Dept 1983], mod 63 NY2d 955 [1984]; Empire Dev. Co. v Title Guar. & Trust Co., 225 NY 53 [1918]; 9 Appleman, Insurance Law and Practice § 5201; 7 Powell, op. cit., H 1029; 2 Harvey, Real Property and Title Closing § 787; *405 44 Am Jur 2d, Insurance, § 525.) The general rules of construction applicable to contracts ordinarily, and insurance particularly, apply to title insurance policies and any ambiguity in the policy will be construed in favor of the insured. (Broadway Realty Co. v Lawyers Tit. Ins. & Trust Co., 226 NY 335, 337 [1919]; 1 NY Jur 2d, Abstracts & Land Title, § 46; 9 Appleman, op. cit., § 5201; 7 Powell, op. cit., ¶ 1038.) Exceptions in title policies are "to be given no wider effect than the language requires”. (Holly Hotel Co. v Title Guar. & Trust Co., 147 Misc 861, 864 [Sup Ct, NY County 1932], affd 239 App Div 773 [1st Dept 1933].) One treatise has observed (7 Powell, op. cit., ¶ 1043, at 92-31): "the exceptions to the liability of the insurer must be construed so as to give to the insured the protection which he reasonably had a right to expect, and to that end doubts, ambiguities, and uncertainties arising out of the language used in the policy must be resolved in his favor.”
The burden of proof in establishing the exclusion is on the insurer. (9 Appleman, op. cit., § 5209.) Generally, to prove the exclusion it is necessary for the title insurer to point to language in the policy that specifically excludes the very condition claimed to trigger liability. (Heidi Assocs. v Lawyers Tit. Ins. Co., 67 NY2d 1041 [1986], revg on dissenting opn 112 AD2d 844, 847-850 [1st Dept 1985]; Chu v Chicago Tit. Ins. Co., 89 AD2d 574 [2d Dept 1982].)
At bar, defendant urges that the language of the exception in schedule B of the policy is applicable since the plaintiff agreed or assumed in the contract of purchase to pay all outstanding taxes. Plaintiff, in turn, argues that the title policy cannot be so construed because it would otherwise render illusory the risks insured against. Defendant also contends that the plaintiff has not suffered a loss within the meaning of the policy as it agreed to pay the tax lien whether or not such lien was insured.
Initially, plaintiff asserts that defendant cannot rely on the contract between plaintiff and its vendor as to the agreement by plaintiff to pay all taxes outstanding because the contract merged into the deed and the provision regarding payment of taxes did not survive delivery of the deed. (See, Staff v Lido Dunes, 47 Misc 2d 322 [Sup Ct, Nassau County 1965]; cf., Caceci v Di Canio Constr. Corp., 72 NY2d 52 [1988].) However, whether plaintiff’s vendor could enforce the contractual provision is not the issue here; rather, the focus in the first instance is upon the language in the contract. (First Natl. Bank & Trust Co. v New York Tit. Ins. Co., 171 Misc 854 [Sup *406 Ct, Westchester County 1939].) In the cited case, the court dealt with the exception language in the title policy and as to "assumed or agreed to” said (171 Misc, supra, at 858): "The words 'assumed or agreed to’ had reference to some particular defect or incumbrance assumed or agreed to by the [insured] by the title conveyance to it or by some collateral agreement made by the [insured] with reference to that specific subject-matter.” Clearly, the contract of purchase and sale constitutes at least a collateral agreement (whether it survives or not) on the subject matter of unpaid taxes.
The next subsidiary question is whether a literal reading of the exclusionary language ("defects, objections, liens or incumbrances”) covers unpaid taxes. Since the title policy generally speaks as of its date of issue as to past, not future, events, the usual exception would relate to taxes that are not yet liens. (Mayers v Van Schaick, 268 NY 320 [1935]; Trenton Potteries Co. v Title Guar. & Trust Co., 176 NY 65 [1903]; 5A Warren’s Weed, New York Real Property, Title Insurance, § 4.05 [2] [4th ed]; 7 Powell, op. cit, [f 1047.) "Incumbrance” is synonymous with "lien” and "lien” means something (like unpaid taxes) that is fully matured. (Cummins v United States Life Tit. Ins. Co., 50 AD2d 545, 546 [1st Dept 1975] [dissenting opn], revd on other grounds 40 NY2d 639 [1976] [no assessment ever came into being]; Annotation, Title Insurance Policy-Coverage, 87 ALR3d 764, 767-769, § 3 [a] [1978] [lien means tax if tax has status as a lien]; Annotation, Title Insurance-Coverage, 128 ALR 373 [1940]; 7 Powell, op. cit., U 1036.) At bar, it is uncontroverted that the unpaid tax had the status of a lien and is therefore within the phrase "liens or encumbrances” in section 4 of schedule B.
Several cases have grappled with the question whether an insured in a particular situation "created, suffered, assumed or agreed” to a lien or incumbrance. (Annotation, Title Insurance-Exclusion of Liability, 87 ALR3d 515 [1978].) Here it is clear that the insured did not "create” or "suffer” the lien in question. (Holly Hotel Co. v Title Guar. & Trust Co., 147 Misc 861, supra; Arizona Tit. Ins. & Trust Co. v Smith, 21 Ariz App 371, 519 P2d 860 [1974]; American Sav. & Loan Assn. v Lawyers Tit. Ins. Corp., 793 F2d 780 [6th Cir 1986].) In American Sav. & Loan Assn. v Lawyers Tit. Ins. Corp. (supra, at 784), as to the words "assume” and "agreed” the court held: " 'Assume,’ under this definition requires knowledge of the specific title defect assumed * * * And 'agreed to’ carries connotations of 'contracted,’ requiring full knowledge by the *407 insured of the extent and amount of the claim against the insured’s title.”
The New York Court of Appeals in discussing language similar to that contained in section 4 of schedule B said (Broadway Realty Co. v Lawyers Tit. Ins. & Trust Co., 226 NY 335, 338, supra): "The exception protects the insurance company from things hidden or done clandestinely, but not from the very acts insured against.”
A major reason for the purchase of title insurance is to protect the insured from a failure to note a defect in a public record. (Johnstone, Title Insurance, 66 Yale LJ 492, 495 [1957]; 5A Warren’s Weed, New York Real Property, Title Insurance, § 5.01 [4th ed]; 15 Am Jur, Trials, Title Insurance Claims, § 9 [1968]; 2 Harvey, Real Property and Title Closing § 788.) At bar, the plaintiff surely intended the purchase price for the realty, claimed by defendant to be a "bargain”, to reflect tax arrears known to it. There is no allegation of misrepresentation or willful concealment by the plaintiff and even were it otherwise the insurer cannot avoid liability on those grounds where, as here, the tax arrears were a matter of public record. (Smirlock Realty Corp. v Title Guar. Co., 52 NY2d 179, supra.)[2] In that case the Court of Appeals construed the title insurer’s obligation to pay very expansively and held that its search and disclosure expertise included an implied duty to perform a reasonably diligent search. (52 NY2d, supra, at 190; Note, Title Insurance: The Duty to Search, 71 Yale LJ 1161 [1962].) At bar, the defendant has offered no excuse for having failed to list the 1988 tax lien as outstanding. As discussed later, the plaintiff would ordinarily expect the risk of an unpaid lien of record to be insured against and the insurer’s attempt to weasel out from under the normal obligation is not to be countenanced.
Therefore, a question of fact exists as to whether plaintiff knew about the arrears in issue and the amount thereof at *408 the time the contract was made with its vendor. As discussed later, plaintiff did suffer a loss within the meaning of the policy if coverage exists and, consequently, the court directs an immediate hearing on the issue of plaintiffs knowledge (CPLR 3212 [c], [g]), to be held on July 25, 1991 at 2:00 p.m. before the undersigned.
If it is established at the hearing that plaintiff had the requisite knowledge so that the exclusion applies, the first cause of action will be dismissed. However, if it is established that the plaintiff lacked the requisite knowledge, so that the exception in schedule B is not applicable, the court will grant judgment to the plaintiff on the first cause of action because in that event to construe the policy as urged by defendant "would nearly eliminate the policy’s coverage altogether”. (American Sav. & Loan Assn. v Lawyers Tit. Ins. Corp., 793 F2d 780, 783, supra.)[3]
[The court dismissed the second cause of action in negligence as barred by the doctrine of merger. The court also held that whether or not the plaintiff knew about the unpaid assessment was not relevant on the question of having suffered a "loss” within the meaning of the policy under the holding in Empire Dev. Co. v Title Guar. & Trust Co. (225 NY 53, 59-60, supra).]
Accordingly, defendant’s motion for summary judgment is granted to the extent of dismissing the second cause of action and is otherwise denied without prejudice to renewal at the conclusion of the hearing on July 25, 1991 at 2:00 p.m. Plaintiffs request for summary judgment on the first cause of action is similarly denied without prejudice to renewal.

. The title policy in section 11 merges other services performed by the title company into the terms of the policy.

. The irony at bar is that pursuant to the reasoning of the New York Court of Appeals in Smirlock Realty Corp. v Title Guar. Co. (52 NY2d 179), the misrepresentation clause in the title policy is no defense ordinarily to nondisclosure by the insured of a defect of record, whereas the rationale of the Federal Court of Appeals in American Sav. & Loan Assn. v Lawyers Tit. Ins. Corp. (793 F2d 780) permits a defense of assumption of a known defect (of record or not), notwithstanding the absence of willful misrepresentation by the insured. The court merely notes the anomaly and does not find it necessary to analyze the wisdom of the competing principles for resolution of this controversy.

. Similarly, as noted earlier, ambiguities in the policy will be construed against the insurer. Literally read, section 4 of schedule B excludes coverage for judgments against the insured and liens assumed or agreed to by the insured. The unpaid tax arrears assumed or agreed to by the plaintiif was one prior to becoming an insured. It may well be argued that the insurer’s defense in reliance on section 4 of schedule B is invalid in these circumstances. (Note, Liability and Meaning of "Loss” in New York Title Insurance, 32 St. John’s L Rev 264, 273 [1958].) Thus, section 4 may be read as applicable only to those instances occurring subsequent to the closing of title and prior to issuance of the policy (since the policy is always delivered later though bearing the closing date). This argument has not been advanced herein and the court declines to adjudicate the matter on this theory.