BURR v. PALMER et al.

(Supreme Court, Appellate Division, Second Department. July 17, 1900.)

TAXATION—LIEN—DATE—INCUMBRANCE—COVENANT OF WARRANTY.

Greater New York Charter, § 1017, declares that the taxes levied on real estate in the city shall be a lien on the property; and section 909 directs the president of the council, after he has estimated and set down on the tax books the amount of the annual taxes imposed, to deliver the tax books to the collector of assessments, in order that the unpaid water rents may be entered therein, after which the city clerk shall issue warrants authorizing the receiver of taxes to collect the sums levied. Defendant's testator conveyed premises to plaintiff on August 10, 1899, by warranty deed, containing a covenant that they were free from all incumbrances. *Held*, that the taxes levied for 1899, warrants for which were not delivered to the receiver of taxes until September 18, 1899, did not constitute an incumbrance at the time the deed was delivered, since the assessment was not complete until the warrants were delivered.

Submission of a controversy between Joseph A. Burr and George Howard Palmer and another, as executors. Judgment for executors.

Argued before GOODRICH, P. J., and BARTLETT, WOODWARD, HIRSCHBERG, and JENKS, JJ.

Joseph A. Burr, in pro. per.
Alden S. Crane, for defendants.

GOODRICH, P. J. Ulpian Van Sinderen conveyed certain premises in the borough of Brooklyn to the plaintiff by warranty deed, containing a covenant that the premises were free from all incumbrances. The deed was delivered as of August 10, 1899. The question involved is whether the taxes of 1899 were or were not a lien on the premises on August 10th. The decision turns upon a clause of section 1017 of the Greater New York charter, a part of which reads as follows:

"All taxes and all assessments for local improvements and all water rents, and the interest and charges thereon, which may, in the city of New York, as by this act constituted, hereafter be laid or may have heretofore been laid, upon any real estate now in said city, shall continue to be, until paid, a lien thereon, and shall be preferred in payment to all other charges."

The plaintiff contends that the taxes of 1899 were laid and became a lien on each separate parcel of real estate, and consequently

on the lot in question, within the words of this section, when the municipal assembly, on July 25, 1899, in accordance with title 6, entitled, "Levying Taxes," passed, and the mayor, on August 8th, approved, the ordinance levying such taxes. The defendant contends that the taxes did not become a lien until the specific amount of the tax against the property in question had been extended upon the assessment rolls, and the rolls and warrants for collection had been delivered to the receiver of taxes. The exact date of the computation and carrying out of the charge on the several parcels of real estate on the roll, as provided in section 909, does not appear; but it may be assumed that this was not completed within the two days intervening the signing of the ordinance by the mayor and the delivery of the deed in question, as the warrants for the collection of taxes were not signed by the proper officials and delivered to the receiver of taxes until September 18, 1899.

The method of levying taxes is found in sections 247 et seq. and 909 of the charter. Section 247 directs the comptroller to submit to the municipal assembly a statement setting forth the amount authorized by law to be raised by tax, and also an estimate of the probable receipts by the city treasurer—

"And the said municipal assembly are hereby authorized and directed to deduct the total amount of such estimated receipts from the aggregate amount of all the various sums which, by law, they are required to order, and cause to be raised by tax in said year, for the purposes aforesaid, and to cause to be raised, by tax only, the balance of said aggregate amount, after making such deduction."

### Section 249 reads as follows:

"The aggregate amount estimated by the municipal assembly and the board of estimate and apportionment, in the annual budget, shall be certified by the controller to the municipal assembly; and it shall be the duty of said municipal assembly, in joint session of both houses, and they are hereby empowered and directed annually to cause to be raised, according to law, and collected by tax upon the estates, real and personal, subject to taxation within the city of New York, the amount so certified, as aforesaid."

Section 909, after directing the final submission of the tax rolls to the municipal assembly, provides that they shall remain in the custody of the assembly; and the president of the council—

"Is hereby, in the name of the municipal assembly and as its act, authorized and directed to cause to be properly estimated and computed the taxes annually imposed, and cause the same to be properly set down or extended in the several assessment-rolls or tax books, as required by the next section. It shall also be the duty of said president to cause the items of said taxes to be carefully added, and to set down the amount of the same therein; and when completed to deliver the tax books relating to real estate to the collector of assessments and arrears, in order that the unpaid water rents of each preceding year may be entered therein. After such completion of the assessment-rolls or tax books it shall be the duty of the city clerk to procure the proper warrants authorizing and requiring the receiver of taxes to collect the several sums therein mentioned according to law."

This section clearly indicates that the assessment roll is not completed until the amount chargeable against each parcel of land is computed and set down, and the unpaid water rates, if any, are added thereto. It is only after this has been done that a warrant can be

65 N.Y.S.—67

issued for the collection of the taxes. It makes no difference that the computation of the amount assessable upon each parcel is to be made under the direction of the president of the council. Section 909 directs this to be done "in the name of and as the act of the municipal assembly." Until this has been done the assessment on each parcel is not complete and final. Emphasis is given to this view by the suggestion that if, for any reason, the computation should never be carried out, there would be no authority for the collection of the taxes on any particular parcel by the receiver of taxes. In May v. Traphagen, 139 N. Y. 478, 34 N. E. 1064, the court said (page 481, 139 N. Y., and page 1065, 34 N. E.):

"That all the proceedings prescribed by the law for the assessment of land for the purposes of taxation must be substantially, if not strictly, complied with, is a well-settled and a familiar rule. The purchaser takes at his peril the title offered to him, and depends upon the strict right of the public officer to sell. That right rests upon a succession of steps, which must have been substantially taken to reach the result. The failure in the present case to separately state the value for assessment of the premises in question amounted in law to a failure to impose any tax which the owner could be held for. There was, in such respect, an absence of a specific requirement of the statute with respect to the annual record. That which the legislature has directed, courts cannot declare immaterial."

Stebbins v. Kay, 123 N. Y. 31, 25 N. E. 207, related to assessments for local improvements, and it was held that the power to levy such assessments exists only where it is distinctly conferred by legislative authority; that, where the mode is prescribed in which the power is to be exercised, it must be followed; and that such mode constitutes an essential element in the proceedings. The court also cited Merritt v. Village of Portchester, 71 N. Y. 309, for the proposition that what the legislature has directed, the courts cannot declare immaterial. The same reasoning applies to the proceedings for the collection of taxes. Judge Cooley, in his work on Taxation (pages 447, 448), says:

"The time when the lien will attach to land must be determined by the terms of the statute. Sometimes the statute names a day as that from and after which the tax shall be a lien. * * * Where no time is thus expressly named, the lien should attach at the time when, by an extension of the tax upon the roll, a particular sum has become a charge upon a particular parcel of land."

Bellinger v. Gray, 51 N. Y. 610, was the case of assessment of taxes by a board of supervisors, whose duty it was to set down in the assessment rolls the respective sums to be paid by the owners of different parcels of land. The court held that this was a part of the duty of the board itself, and could not be delegated, and that as this was not done by the board, but by the collector of taxes, to whom the warrant had been delivered, with instructions to fill up the blank columns, the assessment and warrant were void. So, in People v. Hagadorn, 104 N. Y. 516, 10 N. E. 891, it was held that the duty imposed upon the board of supervisors required, not only that it should establish a ratio upon which a tax is to be based, but also that it should compute and enter in the roll the valuation of the real estate and the amount of the tax levied thereon, and that this must be done before the warrant for collection could be issued. In Lathers v.

Keogh, 109 N. Y. 583, 17 N. E. 131, the court said that, after the assessors had estimated and computed the taxes for the year, the board "must set down against each item of property the sum, in dollars and cents, which is to be paid as a tax thereon. When these and other duties, not necessary to be particularized here, have been performed, the assessment rolls are only then completed and prepared for confirmation, and ready to be transmitted to the receiver of taxes. Until these requirements of the law have been fulfilled, the tax is not due or payable, and no lien attaches to the property, nor can any legal charge for any tax be said to rest upon it." All these cases indicate that the duty of carrying out on the rolls the computation of the amount of the assessment upon each parcel of land is an integral part of the process for the collection of taxes, required by statute to be observed by boards of assessors.

In our view, no difference arises, as to the construction to be placed upon the provision of the Greater New York charter, from the fact that it makes it the duty of the president of the council to cause this computation to be made, and the amount inserted in the roll. Until such computation and carrying out have been accomplished, the tax roll is not complete, and no authority exists for the issuing of a warrant for the collection of taxes. It is the fact of the power to issue, and the actual issuing of the warrant, which determines the time when the taxes become a lien; for it is only then that the processes prescribed for the assessment of the taxes have become complete.

It follows that the taxes of 1899 were not a lien upon the premises in question at the date of the delivery of the deed. Judgment should be ordered accordingly for the defendant, but without costs, agreeably to the stipulation. All concur.