TITLE GUARANTEE AND TRUST COMPANY, Plaintiff, *v.* ISAAC ALLEN
and Another, Defendants.

Municipal Court o  New York, Borough of Brooklyn, First District, February
23, 1932.

*C. Elmer Spedick,* for the plaintiff.

*Isaac Allen,* for the defendants.

WASSERMAN, J. This is an action to recover the sum of $896.70, the amount paid by the plaintiff's assignor to the city of New York for water charges against the premises 350 Knickerbocker avenue, Brooklyn, for the period between November 8, 1924, and July 2, 1928.

There is no substantial dispute between the parties as to the facts. Prior to July 2, 1928, the defendants were the owners of the premises 350 Knickerbocker avenue, Brooklyn. Their ownership dated back prior to November 8, 1924. The premises consisted of seven stores which were separately leased to different tenants under written leases, which contained provisions that the tenant shall pay for the water consumed by him. Each tenant had deposited security with the defendants for the faithful performance of the terms of the lease.

The premises were not subject to a flat water rate charge, but were served with water through two cross-connected meters. In January, 1925, the water register's office reported one of the meters to be out of repair and disconnected from service. With the exception of writing a letter addressed to the defendants advising them of this fact, nothing was done by the water department until February 18, 1929, more than four years after, when a new meter was installed.

On May 22, 1928, the defendants entered into a contract with Dora Schneider, the plaintiff's assignor, for the sale of the premises described above. The contract provided that at the closing of the title, the water rates for the calendar year were to be apportioned,

and that if there be a meter on the premises, the sellers should furnish a reading to a date not more than thirty days prior to the time of closing title. The title was closed on July 2, 1928, and the deed delivered by the defendants to the plaintiff's assignor contained a covenant and warranty that the premises were free and clear of incumbrances excepting those specifically set forth. Nothing was stated in the deed about the water charge. The examination of the records of the tax department made prior to the closing of the title disclosed that there were no charges against the premises for water other than those recorded by the meter which was in good working order and for which provision was made by an adequate deposit made by the defendants with the plaintiff.

At the time of the closing of the title the defendants turned over to the plaintiff, acting on behalf of its assignor, all of the leases covering the premises together with the securities deposited under those leases.

On February 18, 1929, seven months after the title was closed, the water department installed a new meter in the premises, in place of the one which was out of repair, and after ascertaining the flow through the new meter and also through the meter which had not been out of repair, for a period of approximately four months, proportioned the flow of water which would have gone through the defective meter from November 8, 1924, and February 18, 1929, and rendered a bill to the plaintiff's assignor for the sum of $1,073, which the plaintiff's assignor paid without notice to the defendants. The proportionate share of the bill up to the time of closing title, amounting to the sum of $896.70, was assigned to the plaintiff.

It is clear that the amount sought to be recovered in this action was not a lien against the premises at the time that the title was closed. It is a well-settled and familiar rule that all proceedings prescribed by law for the assessment of land for the purposes of taxation must be substantially, if not strictly, complied with. (*May* v. *Traphagen*, 139 N. Y. 478; Cooley Taxation [4th ed.], §§ 447, 448.) Section 1017 of the Greater New York Charter provides that all assessments, taxes and water rates " which may, in the city of New York, as by this act constituted, hereafter be laid or may have heretofore been laid, upon any real estate now in said city, shall continue to be, until paid, a lien thereon." The word " laid " used in this section of the charter has a definite and well-defined meaning. (*Dowdney* v. *Mayor, etc., of New York*, 54 N. Y. 186.) The meaning of the word " laid " is made clear by section 909 of the charter which sets forth in detail the steps to

be taken before the assessment roll becomes completed. Under that section the president of the board of aldermen is required to deliver the tax books annually to the comptroller, " in order that the unpaid water rents * * * of any preceding year may be entered therein." Until these formalities have been complied with, no lien attaches against the property to be charged. (*Burr* v. *Palmer*, 53 App. Div. 358.) Section 1022 of the charter requires the commissioner of water supply, gas and electricity to prepare and transmit, annually, to the comptroller an account of all water rates unpaid for the preceding year, " with the amount due * * * on each lot." This provision was inserted so as to enable the comptroller to comply with the provisions of section 909 of the charter, quoted above, and make the charge a lien against the premises.

Between January, 1925, the time when the meter was reported out of repair and disconnected, and February 18, 1929, when the new meter was installed, no reading of the meter could have been made, and the commissioner of water supply, gas and electricity could not have transmitted to the comptroller any charge for unpaid water against the premises in question in compliance with section 1022 of the charter, and the comptroller could not have added it to the assessment roll to make it a lien against the premises as provided in section 909 of the charter.

The plaintiff's assignor was not liable to the city of New York for that portion of the bill which covered the period ending December 31, 1927, and her property could not have been subjected to any lien for that portion of the bill. Under section 473 of the charter, the city of New York is given two methods of receiving compensation for water furnished by it. One method is by establishing a uniform rate, based on the dimension of the building, exposure, outlets, etc. This rate must be paid regardless of the quantity of water used and is a tax. The other method is by a meter. Under this section no charge under the first method can be made against a building in which a meter shall have been placed. Section 475 of the charter empowers the installation of meters in certain classes of buildings and the charge made depends solely on the quantity of water used. In this class of cases there is merely a voluntary purchase by the consumer of the water who is primarily liable for the charge, but a lien is imposed on the property for any unpaid charge, which lien becomes effective only after the proceedings prescribed in section 909 of the charter have been complied with. (*New York University* v. *American Book Co.*, 197 N. Y. 294; *Silkman* v. *Water Commissioners*, 152 id. 327.) Where water is furnished through a meter to a building which is leased, if the owner of the

building pays the water charge he can recover it from the tenant (*New York University* v. *American Book Co., supra.*)

If it be assumed that notwithstanding the failure of the city of New York to replace the defective meter within a reasonable time it could after four years determine the water consumed during that period by the method employed in this case and subject the property to a lien while it was owned by the same person who owned it at the time that the old meter became out of repair, certain it is that it cannot do so as against a *bona fide* purchaser such as the plaintiff's assignor was. Buyers of real estate must rely upon public records to determine the incumbrances and liens against the property. The plaintiff's assignor had a right to assume that since the charter requires the proper authorities to fix the lien annually for water consumed and not paid for during the preceding year, and no lien appeared of record for water consumed during the year prior to her acquiring the property, that there was no lien. The city was estopped from claiming a lien as against her. (*Curnen* v. *Mayor*, 79 N. Y. 511.) The payment of the bill by her was voluntary and without compulsion. It follows, therefore, that the defendants did not breach the covenant against incumbrances contained in the deed.

The plaintiff urges that, irrespective of the covenant in the deed, it is entitled to recover because the contract for the sale of the property in question provides for the apportionment of taxes and water rates for the calendar year, and in case of a meter that the seller should furnish a reading to a time not more than thirty days prior to the closing, and that this reading should be used as the basis of apportionment. There is no doubt that under the provisions of the contract the defendants would, under ordinary circumstances, have remained liable to the plaintiff's assignor for all unpaid water charges for the current year up to the time of closing title even though the charge had not yet become a lien against the premises. This liability is imposed by the expressed terms of the contract. The payment by the plaintiff's assignor of that portion of the bill cannot be regarded as voluntary because the city of New York had the reserved right to make that portion of the bill a lien against the premises conveyed during the following year by taking the proceedings described by the charter.

However, judgment cannot be given to the plaintiff in this action for that portion of the bill for two reasons: *First*, no evidence has been presented which can be used as a basis for apportioning the bill for this period. *Second*, the property was conveyed subject to leases which contained provisions making the tenants liable for the water rents, and security was deposited by each

tenant for the faithful performance of the terms of the lease. These leases and securities were turned over to the plaintiff's assignor. Since the liability for water furnished through a meter is primarily on the user of the water, the plaintiff's assignor must first look to the tenants and to the securities for reimbursement for this water charge, and can recover from the defendants only upon a showing that she has been unable to get reimbursement from those sources.

Judgment is, therefore, directed dismissing the complaint without prejudice to another action to recover for the water consumed between January 1, 1928, and July 2, 1928.