40 N.Y.2d 639 (1976)
Seymour K. Cummins et al., Respondents,
v.
U. S. Life Title Insurance Company of New York, Appellant.
Court of Appeals of the State of New York.
Argued September 13, 1976.
Decided October 21, 1976.
Thomas Charles Lambert and Samuel Kirschenbaum, New York City, for appellant.
Reuben Schreiber, New York City, for respondents.
Bernard S. Meyer and Daniel Palmieri, Mineola, for The New York State Land Title Association, amicus curiae.
Judges JASEN, GABRIELLI and WACHTLER concur with Judge JONES; Judge COOKE dissents and votes to affirm in a separate opinion in which Chief Judge BREITEL and Judge FUCHSBERG concur.
*640 JONES, J.
We are asked to determine the liability of a title insurance company for nondisclosure of a municipal ordinance predictive of the later adoption of a special assessment to defray the cost of construction of canal bulkheads in the City of Long Beach.
The extent of appellant title company's obligation is to be determined by reference to the provisions of the policy of title insurance which it issued on November 10, 1970. Under that *641 policy appellant insured against damages sustained because of unmarketability of title "by reason of liens or incumbrances affecting title at the date hereof", excepting damage by reason of matters expressly specified in a customary accompanying schedule. One of such exceptions was "[d]efects and incumbrances arising or becoming a lien after the date of this policy", but no exception was set forth with respect to any special assessment or lien for canal bulkheading.
On July 6, 1965 the City Council of the City of Long Beach adopted Ordinance No. 757 designed to raise revenue to defray the cost of canal bulkheading in the city. That ordinance provided, inter alia: "The City shall levy a special assessment for sixty-five (65%) percent of the cost of the improvement" against parcels of land within a bounded area; "such special assessment shall be payable in twenty (20) equal annual installments, with provision for payment of the full amount of the assessment in the first year at a reduction of six (6%) percent", which assessment "shall constitute a lien against such lands in the full amount on December 1, 1965", and "shall be apportioned pursuant to law on or before September 7, 1965". The submission of the controversy filed by the parties in this action pursuant to CPLR 3222 contains no reference to further municipal action until December 7, 1971. On that date the city council adopted Resolution No. 190/71. That resolution, with no internal reference to Ordinance No. 757, provided, inter alia: that the abutting owners of certain lands which we are told lie within but do not constitute the whole of the bounded area of Ordinance No. 757, "be and they hereby are assessed for sixty-five (65%) percent of the cost of bulkheading and the entire cost of fencing and sodding in the total amount of $377,060 for the local improvement" (which it appears to be conceded was the same canal bulkheading project referred to in the 1965 ordinance, construction of which had been fully completed by December, 1971), "which assessment shall be in thirty (30) equal annual installments * * * the first of which installment of principal and interest shall be paid on November 30, 1972".
In the period between the adoption of Ordinance No. 757 in 1965 and the adoption of Resolution No. 190/71 in 1971, on September 15, 1970 respondents entered into an agreement for the purchase of a parcel of land within the property covered by both Ordinance No. 757 and Resolution No. 190/71. On November 9, 1970 title closed and on November 10 *642 appellant issued its policy of title insurance. On the date of closing the assessment rolls of the City of Long Beach contained no entry making reference to any special assessment affecting the subject premises. Thereafter, following the adoption of Resolution No. 190/71 the first notation made on the assessment rolls relating to the canal bulkheading assessment was made on December 2, 1972 on the 1973 assessment roll, reference then being made only to Resolution No. 190/71 and to a levy on November 30, 1972.
The lower courts have held that the title company is obligated to satisfy the lien for the 1971 canal bulkheading assessment and to reimburse respondents for payments made by them on account of such assessment. We now reverse.
The issue is whether the ordinance adopted in July, 1965 created a lien as of December 1, 1965 on the premises covered by the title policy with respect to the special assessment levied and apportioned under the December, 1971 resolution, or whether the title company is otherwise liable to indemnify respondents against such special assessment.
According to its literal terms Ordinance No. 757 was prospective only. Thus (with emphasis supplied) it provided that the city "shall levy a special assessment", but no levy was then made and the submission contains no statement that any such levy was thereafter made other than that made under the 1971 resolution. Similarly the 1965 ordinance stipulated that "said assessment shall be apportioned pursuant to law on or before September 7, 1965", three months prior to December 1, 1965, when it was provided that the lien should attach. Again no apportionment was made, as indeed none could be until the assessment to be apportioned had been determined. We conclude that the special assessment which was to become a lien on December 1, 1965 pursuant to the express provision of the ordinance was an assessment which was to be levied and apportioned within the contemplation and in accordance with the provisions of that ordinance. Even if it be accepted that it was not necessary, although surely envisioned, that this assessment would be levied and apportioned prior to the lien date, no assessment or apportionment was thereafter made during the following six years. Thus, it may be argued that what was an inchoate lien under the 1965 ordinance expired by lapse of time before it was ever perfected.
In our view it cannot successfully be contended under any doctrine of relation-back or -delayed exercise of municipal *643 authority that the assessment levied in 1971 by Resolution No. 190/71 came within the compass of the lien intended to be created by the 1965 ordinance. The construction project, of course, was the same as that with respect to which the 1965 ordinance had been adopted. While reference was made in the minutes of the city council at the time of the adoption of Resolution No. 190/71 to authorization for construction given in 1965, no mention of Ordinance No. 757 was made in the minutes or the resolution itself and there is no provision in the resolution that it was intended to levy an assessment which had been authorized in 1965 or that it was intended to take advantage of any lien which had been created in 1965.
The assessment which first appears in December, 1972 on the 1973 assessment roll is explicitly referable to the 1971 resolution and to that resolution alone. Even had there been no lapse of six years the assessment for which the 1965 lien had been created was for an indebtedness with significantly different payment terms, and the 1965 lien was imposed on a larger bounded area of land than was charged with payment in 1971.
We conclude that no special assessment was ever levied within the contemplation of Ordinance No. 757. Accordingly no predicate assessment having been levied, the lien purportedly created by Ordinance No. 757 never was perfected. Thus, there was no outstanding lien on the premises covered by the title policy at the time that policy was issued.
On the other branch of respondents' contentions it is asserted that even if no lien was created thereby, at the very least the adoption of the 1965 ordinance gave notice of a prospective assessment which was later levied by the adoption of the 1971 resolution (and then became a lien), and that the title company is therefore now liable for its failure to have reported the 1965 ordinance. It suffices to note that the title policy expressly excepted "incumbrances arising or becoming a lien after the date of this policy", here November 10, 1970. Thus, liability cannot be imposed on the title company on this ground.
Accordingly in our view on no theory, in the circumstances disclosed in this CPLR 3222 submission, are respondents entitled to the indemnification that they seek. The order of the Appellate Division should therefore be reversed and the case remitted for entry of a judgment declaring that appellant title company is not obligated to satisfy the lien and assessment *644 for canal bulkheads improvement which is the subject of the controversy between the parties.
COOKE, J. (dissenting).
The syllogism establishing that there should be an affirmance is uncomplicated.
After having agreed to purchase real property designated as 24 Heron Street in the City of Long Beach, plaintiffs engaged defendant to examine title and to issue its report of title and a title insurance policy. Title passed on November 9, 1970 and, on the next day, defendant issued its policy of title insurance under which defendant agreed to insure plaintiffs against "all loss and damage * * * which the insured shall sustain by reason of any defect or defects of title affecting the premises * * * or affecting the interest of the insured therein * * * or by reason of unmarketability of the title of the insured to or in the premises, or by reason of liens or incumbrances affecting title at the date hereof [November 10, 1970] * * * excepting all loss and damage by reason of the estates, interests, defects, objections, liens, incumbrances and other matters set forth in Sechedule B". Under Schedule B there was no listing or mention of any special assessment resulting in the creation of a lien or incumbrance prior to the date of the policy.
Although, on the date of closing, the assessment rolls of the Treasurer of the City of Long Beach contained no entry referring to any special assessment affecting the subject premises, the city council had on July 6, 1965 enacted Ordinance No. 757 entitled "ORDINANCE FIXING SPECIAL ASSESSMENT AREA FOR THE PAYMENT OF COST OF CANAL BULKHEADING". It was provided therein that the city shall levy a special assessment for 65% of the cost of improvement against the parcels benefited, within a described area, of which the subject premises concededly are a part. It was also provided: "Such special assessment shall constitute a lien against such lands in the full amount on December 1, 1965" and "This Ordinance shall take effect immediately."
In those instances where a statute specifies a day as that from and after which an assessment shall be a lien, the time when the lien will attach to real property is determined according to the statutory terms (see Burr v Palmer, 53 App Div 358, 361-362 [citing Cooley on Taxation, pp 447, 448]; 5A Warren's Weed New York Real Property, p 556; see, also, Getman v Niferopulos, 276 N.Y. 161, 167; Carey v Minor C. Keith, Inc., 250 N.Y. 216; Engelhardt v Alvino Realty Co., 248 N.Y. 374; *645 Lyon v Alley, 130 US 177, 188). In Schwartz, Real Estate Manual, it is stated at page 131: "Inquiries should be made prior to entering into the contract as to whether any improvements have been made in the vicinity for which assessments are likely to be made thereafter. The date when an assessment becomes a lien may be fixed by the special act under which it is levied."
The ordinance passed by the City of Long Beach pursuant to valid authority from the Legislature, as to which no question is raised,[*] was clothed with the same character and had the same effect, as it pertained to property within the city limits, as if enacted by the Legislature itself (People ex rel. Doyle v Atwell, 232 N.Y. 96, 102; Crayton v Larabee, 220 N.Y. 493, 501). Since the ordinance declared that the special assessment constituted a lien prior to the issuance of the policy, plaintiffs were entitled to the declaration, as granted by Trial Term, that prior to the date of plaintiffs' taking title there was a lien against the insured premises created by City Council Ordinance No. 757 on July 6, 1965 and that defendant is obligated under its policy of insurance to satisfy said lien and assessment.
The failure of the city council to apportion the assessment on or before September 7, 1965, the date specified in the ordinance, did not affect the date when the assessment became a lien as fixed by the special act under which the lien was created. In any event, under section 118-K of the Long Beach City Charter (L 1933, ch 594, § 1), "[n]o tax, assessment or water rent shall be vacated, set aside, cancelled, annulled, reviewed or otherwise questioned or affected by reason of any error, omission, irregularity or defect, not actually fraudulent".
The order of the Appellate Division should be affirmed.
Order reversed, with costs, and case remitted to Supreme Court, New York County, for entry of judgment in accordance with the opinion herein.
NOTES
[*] In Rachlin v City of Long Beach (Sup Ct, Nassau County, April 15, 1976, PITTONI, J.), where plaintiffs sought a declaration, among other things, that Ordinance No. 757 dated July 6, 1965 was null and void, the court observed that, "[w]ith regard to ordinance no. 757/65, plaintiffs offered no evidence of invalidity, and it appears to be a properly enacted ordinance," and dismissed the complaints.