Thomas ELIOPOULOS, Plaintiff,

v.

NATION'S TITLE INSURANCE OF NEW YORK, INC., a.k.a. U.S. Life Title Insurance Company of New York, Title USA Insurance Corporation of New York, Inc., and TRW Title Insurance of New York, Inc., Defendant.

No. 94–CV–1447.

United States District Court, N.D. New York.

Jan. 16, 1996.

of New York, Inc., for its alleged breach of a title insurance policy, seeking monetary damages and injunctive relief. Pursuant to a settlement agreement dated October 30, 1995, plaintiff received $165,000 in return for withdrawing his primary cause of action against defendant. Defendant moves for summary judgment with respect to plaintiff's two remaining causes of action.

## I. Background

### A. Facts

By deed dated November 30, 1981, from Else Sortire Young to Thomas Eliopoulos, plaintiff acquired ownership and title to a parcel of land known as "Glenburnie on Lake George," a pre-existing subdivision in the Town of Putnam, New York ("the Property"). Plaintiff claims that when he purchased the Property, he intended either to sell lots as configured on the original subdivision map, or to reconfigure the lots and sell them as reconfigured. (Compl. ¶ 14.) Although plaintiff supposed that he could sell lots as originally configured without government approval, he believed that he would need permission from the Adirondack Park Agency ("APA"), a New York State agency, before reconfiguring them. (Id. at ¶¶ 15–16.)

On February 19, 1982, in connection with his acquisition of the Property, plaintiff purchased from defendant, then known as the U.S. Life Title Insurance Company of New York, a $500,000 title insurance policy ("the Policy"). (Id. at ¶¶ 17–19.) The Policy was modified in 1982 and 1983 to reflect survey readings by the land surveyors Coulter and McCormack. (Id. at ¶¶ 5–6.) The parties do not dispute that the Policy has been in full force and effect at all times relevant to this action.

In 1983, a series of state court actions commenced between plaintiff and Arthur Oldham, II, concerning the ownership of a portion of a road on the Property known as "Lake George Avenue." On October 25, 1991, the Supreme Court rendered a decision in favor of Mr. Oldham, which was reduced to a judgment in early 1992. After plaintiff unsuccessfully appealed the decision and the judgment, the amount of acreage on the

Lustberg, Ferretto Law Firm (Robert M. Lustberg, of counsel), Glens Falls, New York, for Plaintiff.

Rowley, Forrest Law Firm (John H. Beaumont, of counsel), Albany, New York, for Defendant.

## MEMORANDUM, DECISION, AND ORDER

McAVOY, Chief Judge.

Plaintiff **Thomas Eliopoulos** brought suit against defendant **Nation's Title Insurance**

Property he owned pursuant to the deed decreased. As a result, plaintiff claims, Lot No. 9 lost roughly 75% of its fair market value and Lot No. 7 lost all of its fair market value. (*Id.* at ¶¶ 34–35, 37–39.) Plaintiff alleged in his first cause of action that despite his notice and demands, defendant refused to compensate him for either loss. Pursuant to the settlement agreement, plaintiff has withdrawn this cause of action.

Beginning in 1992, plaintiff became aware of nine alleged encroachments on the Property, each of which, he asserts, clouds his title to property covered by the Policy. Plaintiff claims that he brought each alleged encroachment to the attention of defendant and requested that defendant take steps to defend against them and to remove the clouds on his title, but that defendant refused to honor the Policy or to take action to remove the clouds on plaintiff's title.

Plaintiff alleges that as a result of the encroachments, claims, and clouds upon his title to the Property, he has (1) lost the right to use, sell, or occupy any of the roads and lots subject to encroachments; (2) incurred taxes upon and costs associated with portions of the Property as to which his rights have been impeded or extinguished; (3) incurred costs and fees; and (4) been deprived of the ability to reconfigure lots and roads to APA specifications so as to improve the configurations of the existing subdivision. (*Id.* at ¶ 61.) Plaintiff seeks a declaration that defendant must take steps to clear plaintiff's title to the Property and that its failure to do so constitutes a breach of contract, and an order directing defendant to take steps to resolve the alleged clouds on plaintiff's title, or in lieu of such injunctive relief, to pay him the costs reasonably associated with retaining independent counsel to do so.

### B. Summary Judgment Standard

Under Fed.R.Civ.Pro. 56(c), if there is "no genuine issue as to any material fact … the moving party is entitled to a judgment as a matter of law … where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538

(1986), *on remand,* 807 F.2d 44 (3d Cir.1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987). The burden to demonstrate that no genuine issue of material fact exists falls solely on the moving party, *Heyman v. Commerce and Indus. Ins. Co.*, 524 F.2d 1317 (2d Cir.1975), and the trial court must resolve all ambiguities and draw all inferences in favor of that party against whom summary judgment is sought. *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985), *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). The Court has examined plaintiff's complaint in light of the preceding considerations.

### II. Discussion

#### A. Title Insurance Policies

■ Federal courts exercising diversity jurisdiction must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The parties agree that New York law should control. Under New York law, a title insurance policy "is a contract by which the title insurer agrees to indemnify its insured for loss occasioned by a defect in title." *Smirlock Realty Corp. v. Title Guar. Co.*, 52 N.Y.2d 179, 437 N.Y.S.2d 57, 60, 418 N.E.2d 650, 653 (1981). It represents the insurer's opinion that the title is valid, "backed by an agreement to make that opinion good, in case it should prove to be mistaken, and loss should result in consequence to the insured." *First Nat'l Bank & Trust Co. v. New York Title Ins. Co.*, 171 Misc. 854, 12 N.Y.S.2d 703, 710 (Sup.Ct. 1939).

■ As with other insurance contracts, the title insurance policy defines the title insurer's obligations. *Cummins v. U.S. Life Title*, 40 N.Y.2d 639, 389 N.Y.S.2d 319, 319, 357 N.E.2d 975, 975 (1976); *see also Citibank, N.A. v. Chicago Title Ins. Co.*, 214 A.D.2d 212, 632 N.Y.S.2d 779 (1995). If the insurer wishes to exclude coverage from its policy obligations, it must do so in clear and unmistakable language. *Rajchandra Corp. v. Title Guar. Co.*, 163 A.D.2d 765, 558 N.Y.S.2d 1001, 1004 (1990). The insurer bears the burden of proving that an insured's

claim falls within such an exclusion, strictly and narrowly construed. *Id.*

## B. Defendant's Argument

■ Defendant advances three main arguments in support of its motion for summary judgment. First, defendant argues that while the Policy obligates it to defend the insured in all "actions or proceedings founded on a claim of title or incumbrances not excepted," the Policy permits but does not require defendant to maintain actions on the insured's behalf. Second, defendant contends that under the Policy, its duty to indemnify plaintiff does not arise unless and until there has been a "final determination" with respect to the subject parcel, and that there have been no final determinations with respect to any of plaintiff's parcels currently at issue. Third, defendant argues that its obligation to defend and indemnify only pertains to parcels covered by the Policy, and that certain of plaintiff's claims fall within Policy exceptions. (D's Mem. 3.)

## 1. Duty to Defend

The first paragraph of the Policy reads, in relevant part, as follows:

IN CONSIDERATION OF the payment of its charges for the examination of title and its premium for insurance, insures the within named insured against all loss or damage not exceeding the amount of insurance stated herein and in addition the costs and expenses of defending the title, estate or interest insured, which the insured shall sustain by reason of any defect or defects of title affecting the premises described in Schedule A or affecting the interest of the insured therein as herein set forth, or by reason of unmarketability of the title of the insured to or in the premises, or by reason of liens or incumbrances affecting title at the date hereof, ... excepting all loss and damage by reason of the estates, interests, defects, objections, liens, incumbrances and other matters set forth in Schedule B, or by the conditions of this policy hereby incorporated into this contract....

(Beaumont Aff. Ex. B. p. 6.) Also relevant is the Policy provision entitled "2. Defense and Prosecution of Suits," which reads, in pertinent part, as follows:

(a) This company will, at its own cost, defend the insured in all actions or proceedings founded on a claim of title or incumbrances not excepted in this policy.

(b) This company shall have the right and may, at its own cost, maintain or defend any action or proceeding relating to the title or interest hereby insured, or upon or under any covenant or contract relating thereto which it considers desirable to prevent or reduce loss hereunder.

(Beaumont Aff. Ex. B. p. 104.) Plaintiff's novel interpretation of these provisions reflects an apparent eagerness to turn both contract law and title insurance law on their heads.

### a. "Defend"

Plaintiff reads the Policy provisions just cited as imposing upon defendant an affirmative obligation to assist plaintiff in his attempt to remove "clouds" on his title. As defendant rightly points out in its memorandum (D's Mem. at 9–10), when paragraph 2(a) of the Policy obligates defendant to "defend the insured in all actions or proceedings founded on a claim of title or incumbrances not excepted in this policy", it does not thereby obligate defendant to *maintain* an action on plaintiff's behalf when plaintiff perceives encroachments upon the covered Property.[1] Furthermore, if the Court were to read paragraph 2(b) of the Policy, which *permits* defendant to "maintain or defend any action or proceeding related to the title" as *obligating* defendant to maintain or defend, then paragraph 2(a) would be superfluous. Plaintiff has failed to demonstrate to the Court that when the parties used the word "defend" in their contract, they really meant "maintain."

This Court would upset established New York law if it were to hold that title insurance companies have an affirmative duty to clear title. None of plaintiff's cited cases support this unusual proposition. *69th St.*

---

1. The fact that plaintiff based his perception on the opinion of a professional surveyor does little

to advance the argument that defendant has an affirmative duty to clear title.

*and Second Ave. Garages Assocs, LP v. Ticor Guar. Co.,* 207 A.D.2d 225, 622 N.Y.S.2d 13 (1995) is inapposite for three reasons. First, the case involves a title insurance company's duty to defend an insured against whom a lawsuit has been initiated. *Id.* at 14. Second, the court determined that the insurer breached its duty to defend not by failing to provide a defense, which the insurer agreed to do, but rather by refusing to provide or accept an independent counsel of insured's own choosing despite a conflict of interest between the insurer and the insured. Third, the court ordered the insurer to compensate the insured for damages it had incurred by proceeding on its own (rather than agreeing to be represented by the same attorney who represented the conflicted insurer), including its reasonable attorneys' fees in defending the title claim and its costs in settling the title claim. The court did not impose upon the insurer an affirmative duty to clear the insured's title.

The case of *Boxer v. Commonwealth Land Title Ins. Co.,* 185 A.D.2d 515, 586 N.Y.S.2d 362 (1992), *appeal dismissed,* 80 N.Y.2d 972, 591 N.Y.S.2d 140, 605 N.E.2d 876 (1992), is also disanalogous. In *Boxer,* the court held that a title insurer has a duty to defend an insured when the allegations in an underlying action initiated against the insured "describe an occurrence potentially covered by the title insurance policy". *Id.* 586 N.Y.S.2d at 363. Nowhere does the court suggest that title insurers have an affirmative duty to clear title.

Also inapposite is *Leslie Apts. v. Title Guar. & Trust Co.,* 42 N.Y.S.2d 686 (N.Y.Sup.Ct.1943). In that case, the insured instituted an action for declaratory judgment to test the validity of certain agreements regarding the insured property. The declaratory judgment went against the insured, who then notified the insurer that a claim had arisen under the policy and requested instructions as to whether to file an appeal. Although the parties decided that the insured's lawyers would bring the appeal, the insurer's attorneys collaborated with them in a "supplemental" capacity. *Id.* at 689. The court held that by defending the title itself, the insured discharged the insurer's legal obligation, which created an implied promise on the part of the insurer to pay the insured's reasonable attorney's fees and costs, "at least from the time the adverse [declaratory judgment] decision was rendered." *Id.* at 689–90.

Of all the cases plaintiff cites, *Leslie* comes closest to supporting plaintiff's contention, but it is nonetheless distinguishable. Crucial to the plaintiff's position, but absent from the *Leslie* court's decision, is any hint that the insurer had a duty to initiate a declaratory action on behalf of the insured. The court merely recognized that the adverse declaratory judgment brought the insured's title under attack, thereby triggering the insurer's duty to defend—either by pursuing an appeal or by compensating the insured for the costs of doing so on its own. This proposition is far-removed from plaintiff's suggestion that defendant has a duty to sue anyone who claims an ownership interest in a portion of the Property, or else to compensate plaintiff for the costs of doing so.

As far is this Court is aware, plaintiff's suggestion that defendant has an affirmative duty to clear title is devoid of legal support. Neither the word "defend" in the Policy nor New York cases discussing title insurers' duty to defend supports plaintiff's attempt to secure legal services from defendant without fulfilling the conditions precedent thereto.

### b. "Actions or Proceedings"

Plaintiff also recommends a novel definition of "actions or proceedings." According to plaintiff, the Policy obligates defendant to "defend" plaintiff's title whenever he calls to its attention the adverse claims of adjoining landowners. Of course, when he uses "defend" in this sense, plaintiff means that defendant has an obligation to maintain actions on his behalf to resolve competing claims to his Property. As plaintiff reads the Policy, this duty arises whenever there is a "cognizable" or "justiciable" encumbrance or cloud on his title. (P's Mem. at 8–9, 11.)

The plain language of the Policy undermines plaintiff's interpretation. As quoted above, the first paragraph of the Policy states that defendant insures the plaintiff "against all loss or damage not exceeding the amount of insurance stated herein and in

addition the costs and expenses of defending the title, estate or interest insured, which the insured shall sustain by reason of any defect or defects of title affecting the premises . . . ." (Beaumont Aff. Ex. B. p. 6.) However, the Policy defines the phrase "defending the title" in the provision entitled "Defense and Prosecution of Suits". Again, the first section of this provision provides that defendant "will, at its own cost, defend the insured in all actions or proceedings founded on a claim of title or incumbrances not excepted in this policy." (Beaumont Aff. Ex. B. p. 104.)

■ Although plaintiff's complaint identifies nine competing claims to portions of his Property, (Compl. ¶¶ 40–58), he only alleges with respect to one such claim that an action or proceeding has arisen that triggers defendant's duty to defend. (*Id.* at ¶ 56.) Plaintiff has failed to submit any evidence indicating that any of the other property disputes have ripened into an action or proceeding. The Policy is devoid of language suggesting that the mere existence of a "cognizable" or "justiciable" claim triggers defendant's duty to defend. Moreover, plaintiff has failed to show that a surveyors' opinion that an encumbrance exists, as contrasted with the commencement of an action or proceeding to resolve competing claims of ownership, triggers defendant's duty to defend. Defendant has no duty to defend against actions or proceedings that adjacent landowners *could* institute in good faith to resolve competing property claims, but have not brought.[2]

■ Plaintiff stands on firmer ground when he alleges that defendant breached its duty to defend him in an action involving Mssrs. Miller and Clutsam, adjoining property owners who asserted claims to a portion of the Property. These two landowners allegedly barricaded a one-hundred-foot portion of "Lake George Avenue" and claimed ownership of the portion. (*Id.* at ¶¶ 55–56; Beaumont Aff. Ex. F (Elio.Dep.), at 44–46.) Plaintiff brought suit against Miller and Clutsam in order to resolve their competing claims and the two defendants in that case filed a counterclaim against plaintiff. (Beau-

mont Aff. Ex. D.) Defendant refused plaintiff's request to undertake his defense in *Eliopoulos v. Miller and Clutsam*, on the ground that the controversy involves an easement in a roadway, for which the Policy excepts coverage. (*Id.*) Plaintiff argues that the Policy covers his dispute with Miller and Clutsam. If he is correct, then the Miller and Clutsam counterclaim constitutes an "action or proceeding" against plaintiff that triggers defendant's duty to defend under the Policy.

The relevant Policy provision states in pertinent part that the Policy excludes coverage for "[t]itle to any property beyond the lines of the premises, or title to areas within or rights or easements in any abutting streets, roads, avenues, lanes, ways or waterways . . . unless this policy specifically provides that such titles, rights, or easements are insured." (Beaumont Aff. Ex. F, at 7.) Plaintiff argues that this exception is inapplicable because the avenue at issue does not abut his property; rather, the avenue lies within the Property insured by the Policy—in other words, he owns "Lake George Avenue." (P's Mem. 10–11.) Defendant reads the same Policy language as excluding coverage for all roads and avenues, whether public or private, which by their very nature "abut" the properties as to which plaintiff perceives clouds. (D's Reply Mem., at 7.)

Having considered the parties' arguments and the Policy language, the Court concludes that plaintiff has presented a genuine issue with respect to the material fact of whether the Policy excepts coverage for his dispute with Miller and Clutsam regarding "Lake George Avenue." Therefore, plaintiff has raised a genuine issue of material fact as to whether defendant breached the Policy by refusing to defend him against the Miller and Clutsam counterclaim. *See Boxer*, 586 N.Y.S.2d at 363 (holding that title insurer has duty to defend insured when allegations in underlying action initiated against insured "describe an occurrence potentially covered by the title insurance policy").

**2.** Note that the prerequisite to defendant's duty to defend—the institution of an action or proceeding "founded on a claim of title or incum-

brance"—supports and amplifies the Court's earlier discussion of what the duty to defend entails.

### 2. Duty to Indemnify

 Plaintiff argues that pursuant to the Policy, defendant must either "take steps" to clear title to the Property or compensate plaintiff for the costs "*he* will incur to do so." (P's Mem., 13.) To the extent that plaintiff's request for monetary compensation is merely a repetition of plaintiff's demand that defendant clear title, the Court has already resolved it in defendant's favor. To the extent that the request constitutes a claim for indemnification under the Policy, it is baseless.

The Policy provides that "No claim for damages shall arise or be maintainable under this policy except ... [w]here there has been a final determination adverse to the title upon a lien or incumbrance not eexcepted [sic] in this policy." (Beaumont Aff. Ex. B, at 104.) The Policy also supplies a definition for "final determination": "Wherever the term 'final determination' or 'finally determined' is used in this policy, it means the final determination of a court of competent jurisdiction after disposition of all appeals or after the time to appeal has expired." (*Id.*)

Plaintiff urges upon the Court another novel interpretation of clear and unambiguous Policy language. According to him, he has satisfied the "final determination" condition to bringing a claim against defendant for damages because "[c]ertain persons have made final determination [sic] as to their rights to [plaintiff's] insured property." (P's Rule 7.1[f] Statement, ¶ 10.) The plain language of the Policy simply will not support plaintiff's free-wheeling and self-serving interpretation.[3] Nor do the cases plaintiff cites, *Broadway Realty Co. v. Lawyers' Title Ins. & Trust Co.*, 226 N.Y. 335, 123 N.E. 754 (1919), and *Holly Hotel Co. v. Title Guar. & Trust Co.*, 147 Misc. 861, 264 N.Y.S. 3 (N.Y.Sup.Ct.1932), *aff'd*, 239 A.D. 773, 264 N.Y.S. 7 (1933), support his position.

Moreover, since plaintiff has failed to supply evidence indicating that he has incurred actual monetary losses due to the claimed "clouds" on his title, it is meaningless for him to suggest that defendant has a duty to indemnify him. *Chrysler First Fin. Servs.*

*Corp. v. Chicago Title Ins. Co.*, 156 Misc.2d 814, 595 N.Y.S.2d 302, 306 (N.Y.Sup.Ct.1993) (holding that a plaintiff suing on an indemnity contract "is not entitled to indemnification prior to establishing damages" and reasoning that "Since title insurance is a contract of indemnity against actual monetary loss or damage, the insured has the burden of establishing the extent of the loss or damage.") (citation omitted).

As defendant correctly points out, plaintiff has failed to provide evidence showing that a court of competent jurisdiction has issued a "final determination" as to any of the perceived "clouds" on his title. He has therefore failed to raise a genuine issue with respect to the material fact of whether defendant owes him a duty of indemnification.

### III. Conclusion

Plaintiff has failed to raise a genuine issue of material fact with respect to whether defendant had an affirmative duty to clear title that it breached, whether defendant breached its duty to provide a defense as to eight out of nine perceived "clouds" on his title, or whether defendant breached its duty to indemnify. However, plaintiff has raised a genuine issue of material fact as to whether defendant breached its duty to defend plaintiff against the Miller and Clutsam counterclaim.

### IT IS HEREBY ORDERED THAT

Defendant's motion for summary judgment is GRANTED except with respect to plaintiff's claim that defendant breached its duty to defend him against the Miller and Clutsam counterclaim.

### IT IS SO ORDERED.

---

**3.** The Court also notes that a surveyor's opinion that an ownership dispute exists concerning a portion of property covered by a title insurance policy does not represent a "final determination" undermining the insurer's guarantee of good title on the date of the policy's issuance.