LAWYERS TITLE INSURANCE CORPO-
RATION, Appellant,

v.

RESEARCH LOAN & INVESTMENT
CORPORATION, Appellee.

No. 17996.

United States Court of Appeals
Eighth Circuit.

June 15, 1966.

Rehearing Denied July 8, 1966.

Bob J. Keeter, of Mann, Walter, Powell, Burkart & Weathers, Springfield, Mo., Jack A. Powell, Springfield, Mo., on the brief, for appellant.

B. H. Clampett, Springfield, Mo., E. Wayne Collinson, Springfield, Mo., on the brief, for appellee.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and MEREDITH, District Judge.

MEREDITH, District Judge.

Appellant, Lawyers Title Insurance Corporation (hereinafter referred to as Insurance Corporation), appeals from a judgment of the United States District Court for the Western District of Missouri in favor of appellee, Research Loan and Investment Corporation (hereinafter referred to as Research), in the amount of $20,701.66, with interest at six percent from the date of demand amounting to $3,312.16, for a total of $24,013.82, and costs. Jurisdiction is based on diversity of citizenship, Insurance Corporation being a citizen and resident of Virginia, and Research being a citizen and resident of Missouri.

This action was brought to recover on a policy of title insurance issued by appellant to appellee on November 30, 1961. For the sake of clarity, we shall relate the background facts which were stipulated before turing to the disputed issues.

The title insurance policy covered two tracts of land lying in or near Meadowbrook Manor subdivision in Springfield, Missouri, which we label for discussion as Tract 1 and Tract 2. In June 1960, Tract 1 was owned by Jamdo Corporation, the majority stockholders of which were G. E. Barnhouse and his wife and J. Don Helms and his wife. Tract 2 was purchased by the Helms from J. D. and Jacqueline Gillenwaters on June 3, 1960. The Helms gave the Gillenwaters a promissory note in the amount of $50,264.91 and secured the note with a deed of trust on Tract 2. Also on June 3, 1960, Jamdo Corporation and the Helms borrowed $70,000 from the Inglis Mortgage Company, executing a promissory note signed by Jamdo and by the Helms. To secure this note, Inglis was given a second deed of trust on Tract 1 and a third deed of trust on Tract 2. Both tracts were conveyed to Kenneth P. Berg and his wife on November 29, 1960. At this time the Helms remained personally obligated on the $70,000 Inglis note and the $50,264.91 Gillenwaters note. The Bergs, in order to secure improvement loans,[1] placed four

[1] Two of the Berg deeds of trust secured construction loans made my Inglis Mortgage Company. The remaining two Berg deeds of trust secured commissions owed to the Bel Air Realty Co. All of these deeds of trust were placed against the property during the course of development and were directly related to the development of the property.

deeds of trust on lots in Tract 1 during the time they owned the property. On July 28, 1961, the Bergs conveyed both tracts to Motel and Apartment House Developers, Inc. On September 1, 1961, Mr. Helms received a letter from the Gillenwaters' attorney stating that the promissory note given to the Gillenwaters was delinquent. A default and foreclosure on the Gillenwaters note and deed of trust would have jeopardized the $70,000 note to Inglis on which Helms and his wife were still personally obligated. On September 27, 1961, Motel and Apartment House Developers, Inc., conveyed the property to Jamdo Corporation. There was no monetary consideration for this transfer but the deed recited that:

"Grantee accepts property described above subject to mortgages, liens, and indebtedness of all nature, and agrees to make payment on same, without any recourse against Grantors."

At this time Barnhouse was president of Jamdo and J. Don Helms was secretary. On October 23, 1961, Jamdo Corporation conveyed the property to appellee, Research. Again there was no monetary consideration, the deed containing the same clause as that set out above. Both of these deeds were recorded on November 1, 1961. The majority stockholders of Research at this time were J. Don Helms and his wife and Dean Saxton and his wife, and both Helms and Saxton were officers. On November 6, 1961, Don Helms and Dean Saxton went to Jack Hogan, vice-president of the Thieme-Hunt Abstract Co. and Insurance Corporation's agent, and requested a title insurance policy. No written application was made, the request being handled on an informal basis. No inquiry was made by Mr. Hogan as to what knowledge, if any, Mr. Helms and Mr. Saxton had concerning encumbrances.

A policy of title insurance, policy number Y–867–607, for which Research paid $195 was issued on November 30, 1961. Insurance Corporation agreed to pay Research all loss or damage, not exceeding $100,000, which it

"* * * shall sustain by reason of any defects in the title of the Insured to the estate or interest of the Insured covered by this Policy * * * or by reason of liens or encumbrances against the same as of the date of the final examination of the title thereto, to-wit: November 30, 1961 at 8:00 A.M."

Schedule B of the policy sets out a description of the two tracts of land involved. Schedule C lists certain encumbrances, liens, etc., which are excepted from the coverage of the policy. The deed of trust to the Gillenwaters and certain easements and rights not here pertinent are listed in Schedule C. The $70,-000 Inglis deed of trust and the four small encumbrances placed on the property by the Bergs are not listed in Schedule C. The policy contained the following conditions and stipulations:

"3. Nothing contained in this Policy shall be construed as insuring against loss or damage by reason of fraud on the part of the Insured; or by reason of claims arising under any act, thing, or trust relationship done, created, suffered or permitted by the Insured; or by reason of the fact that the Insured was not a bona fide purchaser for value without notice, or that the acquisition of the estate or interest hereby insured contravened the laws of the United States establishing a uniform system of bankruptcy; or against the rights of dower, courtesy, or homestead, if any, of the spouse of the Insured; nor will the Company be liable in any event for any loss or damage arising from the refusal of any party to carry out any contract to purchase, lease or loan money on the estate or interest insured.

"9. Defects and encumbrances arising after the effective date of this Policy, or created, suffered, assumed or agreed to by the Insured, and taxes and assessments which have not become liens up to the effective date of this Policy, or which, although they have become liens, are not payable until some

future date, or in future installments, are not to be deemed covered by this Policy; and no approval of any transfer of this Policy shall be deemed to make it cover any such defect, encumbrance, taxes or assessments.

"10. Any untrue statement made by the Insured, or the agent of the Insured, with respect to any material fact; any suppression of or failure to disclose any material fact, any untrue answer by the Insured, or the agent of the Insured, to material inquiries before the issuing of this Policy, shall void this Policy."

Research brought this action to recover the amounts expended by it to clear the property of the Inglis deed of trust and the four deeds of trust placed upon the property by the Bergs, contending these were covered defects. Insurance Corporation contended that these encumbrances fall within the exclusionary conditions; that Research suffered no loss; that Research had failed to disclose material facts within its knowledge making the contract void or subject to reformation; and that the policy was subject to reformation on the ground of mistake. The parties stipulated that the five deeds of trust were matters of record; that Research, through its officers, had actual notice of the $70,000 Inglis deed of trust (although Research believed that the payoff figure for that mortgage was only $56,000 rather than $61,000, plus interest, which in fact it was); and that Research made no affirmative misrepresentations in obtaining the policy of title insurance. The parties disputed whether Research had actual notice of the four deeds of trust placed on the land by the Bergs; whether the conditions of the policy were applicable; and whether Research had suffered any loss.

The District Court found that Research did not have actual knowledge of the four deeds of trust placed on the land by the Bergs and that none of the policy conditions were applicable. It also found that the difference Research was required to pay between the actual amount of the Inglis mortgage and what it believed the amount to be was not due to anything Insurance Corporation did or failed to do. The Court refused the equitable relief of reformation because "equity may not grant relief for unilateral mistake if the facts show that he who made such a mistake was grossly or culpably negligent in making it," and found that Insurance Corporation was grossly negligent. Accordingly, judgment was entered for Research on the four deeds of trust placed on the property by the Bergs.

Insurance Corporation urges reversal on the following grounds: (1) that Research was not a bona fide purchaser for value without notice and that the claims arose out of an act or thing done, created, suffered or permitted by the insured, thereby precluding recovery under paragraph 3 of the policy conditions; (2) that Research had assumed and agreed to the encumbrances involved under the deed by which it took the property and is thereby precluded from recovery by paragraph 9 of the policy conditions; (3) that Research failed to disclose facts material to the risk thereby precluding recovery under paragraph 10 of the policy conditions; (4) that reformation of the policy should have been granted on the ground of Insurance Corporation's mistake which was known to Research; and (5) that there was no proof of actual damages. We reverse.

■■ This appeal raises serious questions concerning the fundamental nature of title insurance and the effect of policy conditions such as those set out above. It has been recognized consistently that title insurance is more than a contract of indemnity. Usually, the very purpose and essence of the title insurance transaction is to obtain a professional title search, opinion and guarantee. The policy of title insurance is in the nature of a warranty. Empire Development Co. v. Title Guaranty & Trust Co., 225 N.Y. 53, 121 N.E. 468 (1918). This theory of the basic nature of title insurance has led to the enunciation of the rule, relied on heavily by appellee, that the insured's knowledge of a defect will not ordinarily

constitute a defense to a claim under the policy. However, this rule was established in the context of title insurance policies that did not contain conditions similar to those in the present policy. These conditions clearly are intended to limit the title insurer's liability. In the case of paragraph 10 of the policy conditions, dealing with misrepresentation and nondisclosure, liability is limited by declaring the policy void under certain circumstances. Paragraphs 3 and 9 of the conditions attempt to limit liability by excepting from coverage certain classes of defects and encumbrances. At issue is the meaning of these various conditions and the extent to which they will be given effect by the courts.

We have found no authority to support the proposition that a title insurer cannot add reasonable limiting conditions to its insurance policy. Such conditions, while requiring careful scrutiny, cannot be said to be per se violative of the basic nature of title insurance. Generally speaking, the parties to a title insurance policy are free to define what losses or encumbrances they intend to cover. Glickman v. Home Title Guaranty Co., 15 Misc.2d 167, 178 N.Y.S.2d 281 (N.Y.1958), affirmed 8 A.D.2d 629, 185 N.Y.S.2d 756, appeal denied 8 A.D.2d 827, 190 N.Y.S.2d 333. Such limiting conditions have been recognized in many cases. Alabama Title & Trust Co. v. Millsap, 71 F.2d 518 (C.C.A.5, 1934); First National Bank & Trust Co. of Port Chester v. New York Title Ins. Co., 171 Misc. 854, 12 N.Y.S.2d 703 (1939); Feldman v. Urban Commercial, Inc., 87 N.J.Super. 391, 209 A.2d 640 (1965); Glickman v. Home Title Guaranty Co., supra. In considering such conditions we must bear in mind that title insurance policies are subject to the same rules of construction as are other insurance policies. 9 Appleman, Insurance Law and Practice, § 5201. The courts are without authority to re-write such contracts; instead their function is to ascertain and give effect to the intention of the parties as disclosed by the contract. Lynch v. National Life and Accident Insurance Co., 278 S.W.2d 32

(Mo.App.1955); North Kansas City Memorial Hospital v. Wiley, 385 S.W.2d 218 (Mo.App.1964). If the terms of the policy are open to construction, then the Court's function is to construe the contract as a whole so as to provide protection commensurate with the reasonable expectations and intentions of the parties; and we hardly need add that any doubts will be resolved against the party who wrote the contract. Feldman v. Urban Commercial, Inc., supra; Brugioni v. Maryland Cas. Co., 382 S.W.2d 707 (Mo.Sup.1964). However, words which are plain and unambiguous must be given their commonly accepted meaning; the meaning which would reasonably be attached to them by the ordinary person of average intelligence. Eaglestein v. Pacific National Fire Ins. Co., 377 S.W.2d 540 (Mo.App.1964).

The trial court found that none of the policy conditions precluded recovery on the four Berg deeds of trust. The Court's discussion of these conditions focuses primarily on the misrepresentation defense and paragraph 10 of the policy conditions. In dealing with that issue, the Court reasoned that while suppression of a material fact where there is a duty to speak will void an insurance policy, (even absent a condition such as that found in this policy) ordinarily there is no duty to speak in the context of a title insurance transaction. We agree. Paragraph 10 must be given a common sense application and, considering the nature of title insurance transactions, a duty to speak could be found only if the insurance applicant had actual knowledge of certain defects or encumbrances. Further, misrepresentation could be found only if one charged with such a duty to speak intentionally failed to disclose the information. The appellant did not sustain its burden of proving that Research had actual knowledge of the four Berg deeds of trust. While it was stipulated that Research had actual knowledge of the $70,000 Inglis deed of trust, the evidence reveals that this information was disclosed to appellant's agent. However,

the fact that appellant cannot prevail on the misrepresentation defense is not determinative of the defenses based on paragraphs 3 and 9 of the policy conditions. These conditions, if they are to be given effect, do not necessarily require a finding of actual knowledge of the defects or encumbrances. We turn then to a consideration of paragraph 9 of the policy conditions which we find to be determinative of this appeal.

Appellee contends that paragraph 9 cannot preclude recovery because of the traditional rule that knowledge of a defect or encumbrance can never constitute a defense to a title insurance claim absent a finding of affirmative misrepresentation. This argument fails to take into consideration the difference between the various policy conditions involved. As we pointed out above, the condition in paragraph 10 attempts to limit liability with regard to otherwise covered defects by declaring the policy void under certain circumstances. To the contrary, paragraph 9 attempts to limit liability by declaring certain classes of defects and encumbrances to be excepted from coverage in the first instance. Assuming arguendo that the decisions require holding that knowledge of an encumbrance will not constitute a defense if the encumbrance is covered by the policy, the parties would nonetheless be free to define what losses or encumbrances they intend to cover. Glickman v. Home Title Guaranty Co., supra.

Paragraph 9 of the policy conditions attempts to except from coverage defects or encumbrances "created, suffered, assumed or agreed to by the Insured." We find that this condition reasonably applies to the four Berg deeds of trust. This conclusion is compelled by the unusual nature of this transaction. Research took title by a deed dated October 23, 1961, which recited that

"Grantee accepts property described above subject to mortgages, liens, and indebtedness of all nature, and agrees to make payment on same, without any recourse against Grantors."

The indebtedness which Research had immediately in mind at this time was the Gillenwaters note and the Inglis note. The threatened foreclosure on the Gillenwaters deed of trust was the catalyst for this series of transactions. However, the officers of Research also had knowledge of specific improvements which had been made on the property by the Bergs and they assumed that these improvements had been financed by construction loans. The officers of Research were experienced in the real estate business and it taxes credulity to contend that they did not intend to assume obligations which they reasonably surmised had been placed against the property. We must emphasize that this was not an ordinary deed nor an ordinary title insurance transaction. The deed by which Research expressly agreed to assume existing obligations was dated October 23, 1961, and was filed of record November 1, 1961. The application for title insurance was not made until November 6, 1961. If Research had applied for title insurance prior to closing the deal we would have an entirely different situation. In that event, it would be reasonable to conclude that Research was relying on the title insurer to advise it of the true state of the record title and intended to assume, in the context of the policy condition, only those obligations which the title search revealed. However, in this case the application for title insurance was made after the deal had been closed and there is no evidence showing that Research was relying on the title insurer to advise it of encumbrances. The only possible conclusion is that the "assumed or agreed to" condition applies to the four Berg deeds of trust since Research did assume by deed all existing obligations, did not rely on the title insurer to advise it of encumbrances, and did have reason to believe the prior owners had placed such encumbrances on the property.

We have made this determination and reverse outright because the case was decided on documentary evidence below and because we find, as did the trial

judge, that no problem of local law is involved. The Missouri law on this subject is consistent with the general principles of decision announced elsewhere. No good purpose could be served by remanding for further proceedings. 5B C.J.S. Appeal and Error § 1924, et seq.

Accordingly, the judgment appealed from is reversed and the cause remanded to the District Court for the entry of judgment in favor of appellant-defendant and against appellee-plaintiff.