MALKIN, ET UX. *v.* REALTY TITLE INSURANCE COMPANY, INC.

[No. 441, September Term, 1965.]

*Decided October 12, 1966.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, OPPENHEIMER, BARNES and McWILLIAMS, JJ.

*Karl G. Feissner,* with whom were *Erwin A. Alpern* and *Alpern & Feissner* on the brief, for appellants.

*Frank W. Wilson,* with whom were *Wheeler, Moore & Korpeck* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

In September 1890 Southern Investment Company (a Virginia corporation) acquired a 50 acre tract in Montgomery County, near Bethesda, and named it Glen Mar Park. The plat showing its division into 200 lots was recorded in December 1891. The genesis of this litigation will be found in the unorthodox characteristics of that plat.

In the early spring of 1962 Lot 9 in Block 6 of Glen Mar Park, together with the brick house which had been built thereon (5213 Sangamore Road), was offered for sale. Appellants (the Malkins) inspected the property and signed a contract for its purchase. A Washington bank agreed to provide $17,300 of the $26,000 sale price and the appellee undertook the examination of the title and the preparation of the documents necessary to effect the transfer. The bank required a survey and title insurance.

On 11 May the Malkins went to appellee's office for the closing. Although Mr. Malkin is a certified public accountant and a graduate in law, he and his wife were accompanied by their attorney. When they examined the plat made by the surveyor they "noticed that * * * [there] was 10 feet off of the property." The surveyor had shown the outlines (70.25 x 155) of Lot 9 as they appear on the 1891 plat. A former owner, however, had conveyed the southerly 10 feet of the lot to an adjoining owner. The manner of placing this 10 foot strip on the plat indicated a reduction in the width of the lot from 70.25 feet to 60.25 feet. Since the Malkins seemed uneasy about this, appellee's settlement officer suggested that the title policy, which was on the table with the other papers, be changed from a mortgagee policy (protecting only the bank) to an owner's policy which would provide protection to the Malkins as well. Although this increased the settlement costs by about $60.00, the Malkins and their attorney agreed and the closing was concluded.

The surveyor's plat (examined at the closing) also shows

(quite plainly, we think) that the westernmost 33.8 feet of the lot is occupied by the paving of Sangamore Road. Thirteen months later the Malkins sued the appellee claiming that by its policy of title insurance it "insured to the plaintiffs the full and beneficial use of * * * [Lot 9], which by virtue of the encroachment and/or public roadway on 2000 square feet of said land has resulted in a loss to the plaintiffs of the value of said land amounting to $2,500." [1] This appeal is from the judgment on the verdict in favor of appellee directed by Judge Moorman who presided at the trial.

The facts are difficult to grasp without a clear understanding of the 1891 plat. Mention has already been made of its unorthodox characteristics. In the first place no scale is shown. Close inspection indicates, however, that a scale of 1 inch = 150 feet, while not accurate, is at least workable. The plat filed as an exhibit in the instant case is a blueprint of a copy of the original and we doubt the original was especially informative. Most of the lots are shown to be 155 feet long and 70.25 feet wide and to contain 10,889 square feet (155 x 70.25) despite the fact that some appear to be twice as large as others. The 70.25 foot dimension, with some exceptions, is nearly to scale but it can not be reconciled with the 155 foot dimension until one discovers that the 155 foot line [2] begins *not* at the lot line but at the *center of the street*. When one looks at the lots on Sangamore Road, however, it is immediately apparent that, although the plat shows them to be 70.25 x 155, they are not as deep as the other lots. One understands why when one realizes that the western boundary line of the original 50 acre tract coincides with the west side of Sangamore Road. Since the developer owned no lots on the west side of Sangamore Road he included its *full* width in the 155 foot depth of the lots on the east side. This applies uniformly to the 17 lots on Sangamore Road. The legend on the 1891 plat states that "Southern Investment Company dedicates to public use the Streets, Avenues and Alleys" shown thereon.

---

1. The second count was based on appellee's alleged negligent failure to examine properly the land records of the county.

2. In the case of some of the corner lots the 70.25 line also runs to the center of the street.

In stating his reasons for directing a verdict for the appellee Judge Moorman referred to the following language (Par. 8 (6)) of the title policy:

> "8. Nothing contained in this policy shall be construed as insuring * * *
>
> (6) against defects and encumbrances * * * created, suffered, *assumed or agreed to by the insured.*" (Emphasis supplied.)

He pointed out that the Malkins had inspected the property [3] and that the fact that Sangamore Road occupied part of the lot was known to them and agreed to at the closing. In our judgment the evidence supports the decision of the trial judge.

The Malkins cast themselves in the role of simple, "unsophisticated" people who relied upon the expertise and superior knowledge of appellees' settlement officer. We do not see it quite that way. Mr. Malkin's experience in the accounting field and his training in the law alone would seem to be enough to lift him out of the ranks of the "unsophisticated." Nevertheless, he employed a competent and experienced attorney to represent him at the settlement. We can certainly assume that his attorney knowledgeably and carefully inspected the deed, the deed of trust, the statement of settlement, the survey, and the title policy. It is very likely that Mr. Malkin did likewise. He (Malkin) testified that when he "got the survey there was a question, there was discussion, and we noticed it was 10 feet off of the property." The following is quoted from his cross-examination:

> "Q. Was there a road called Sangamore Road running in front of the property at the time that you purchased the property and prior to the time you entered into a sales contract for the purchase of this property? A. You are absolutely right, and *I showed the settlement officer—*"
>
> * * *
>
> "Q. Mr. Malkin, at the time of settlement were you given a copy of the survey? A. Yes, sir.

---

**3.** The policy also provides that appellee does not insure against defects which "an inspection of the premises would disclose."

"Q. And did the survey show essentially the paved roadway running in front of the house as has been introduced here in evidence today in one of the plaintiffs' exhibits? Is that the same survey that you were shown at the time of settlement, and given to you? A. Yes. This is a copy of the settlement that I was shown.

"Q. And it is the same survey that you were shown at the time of settlement? A. Yes.

"Q. And it showed a paved roadway running in front of the house? A. Right. *This was questioned."* (Emphasis supplied.)

The plat made by the surveyor besides showing the Sangamore Road pavement to be within the boundaries of the lot also shows a hedge on the north boundary line, a wire fence on the east (rear) boundary line and wire fencing along the south boundary line.[4] We must assume all this was seen by the Malkins when they "personally inspected the property." Their recollection of the visit must certainly have prompted whatever questions were asked concerning the "paved roadway." There is nothing in the record, however, to indicate what was said about the "paved roadway." There were at least four persons present at the closing, the Malkins, their attorney and the settlement officer [5] but Mr. Malkin was the only one produced as a witness. The others were available and it is perhaps unfortunate they were not called upon to testify because the absence of what very likely would have been enlightening testimony provokes the suspicion it might have been less than favorable.

The Malkins emphasize the payment of the larger premium for the owner's title policy and they seem to suggest that this should enhance their claim for damages. In the circumstances this must be rejected as being without merit. Mr. Malkin and his attorney were fully cognizant of the function and the value of title insurance. The mortgagee policy had to be paid for in

---

4. This plat is not in any respect at variance with Lot 9 as shown on the 1891 plat, except for the 10 feet conveyed away.

5. The sellers executed the deed in Los Angeles, California.

any event and it seems to us most unlikely a prudent attorney would recommend *against* an additional expenditure of $60 to protect a $26,000 investment. Nor do we think it likely either Mr. Malkin or his attorney thought that the appellee, for an additional $60, would undertake the obligation of evicting Montgomery County from its occupancy of part of the lot or, in the alternative, of paying the Malkins $2,500.

We have not discovered in this record any evidence which could support a finding that the Malkins were in any way cozened or put upon by appellee's settlement officer nor are we aware of anything which could lead one to believe that the Malkins or their attorney misinterpreted or misunderstood any statements made by the settlement officer. We are satisfied they understood that Sangamore Road occupies a part of the lot, that this made no difference to them since they were getting precisely what they saw when they inspected the property, that they freely elected to complete the transaction and that this step was taken with the knowledge and advice of counsel.

Probably it is fair to assume that counsel for the Malkins inspected the mortgagee policy which had been prepared by appellee in advance of the closing. That policy, in section B thereof, excepted the "paved roadway encroaching across the entire front of the property." They could not then have known that the owner's policy, which was not prepared until five days later, would omit that exception. Since no reason for its omission has been given (or suggested) we can only guess that it was an inadvertence.

There is in the case a very curious circumstance which justifies comment, perhaps, but which does not require decision. Appellee insured appellants "against direct loss or damage * * * [which appellants] shall sustain * * *. Any loss hereunder shall be established and the amount thereof ascertained and paid in the manner provided in said Conditions and Stipulations and not otherwise." In the conditions and stipulations it is provided that appellee "shall be liable hereunder in damages only: (1) Where there has been a final determination in a court of competent jurisdiction under which the insured may be dispossessed or evicted from any part or all of his estate. * * * " Appellants' standing to maintain this action was

challenged neither in the court below nor in this Court. We can only suppose appellee had good reason not to do so.

The views expressed herein make discussion of the other questions raised by appellants unnecessary.

*Judgment affirmed.*
*Costs to be paid by appellants.*