[No. 5163–1.   Division One.   October 16, 1978.]

EUGENE N. KINISKI, ET AL, *Appellants,* V. ARCHWAY
MOTEL, INC., ET AL, *Respondents.*

*Sam Peach,* for appellants.

*Sherwood, Bentley & Anderson, Robert Sherwood, Ernest Bentley, Nelle & Packer, Richard A. Nelle, Asmundson, Rhea & Atwood, T. B. Asmundson, Treece, Richdale & Malone,* and *Thomas Treece,* for respondents.

MUNSON, C.J.—Plaintiff Marion K. Kiniski appeals from a dismissal of her action against Transamerica Title Insurance Company, Archway Motel, Inc., and Douglas Freeman, d/b/a Freeman Realty, to collect on a promissory note and mortgage.[1] She contends the court erred in dismissing these respondents because (a) there was a defect either in the title or in the execution of an instrument covered by

[1]Plaintiff Mrs. Kiniski did obtain judgments against Michael and Joan Thorstad, Tideland Escrow Company, Inc., a Washington corporation, and Leonard and Beverly J. Serebrin, husband and wife; they are not parties to this appeal. Since trial, Mrs. Kiniski has passed away, but the action has continued in her name, although her husband, as executor of her estate, has been substituted as plaintiff. Additionally, it is noted that it developed during the pendency of this action that Michael Thorstad was not divorced from his first wife, and thus his marriage to Joan Thorstad was void. The Thorstads' marriage was annulled in September of 1974. Also, the Tideland Escrow Company, Inc., has gone out of business.

the mortgage policy issued by Transamerica Title Insurance Company; (b) the Archway Motel, Inc., should be liable for the wrongdoing of its officers and directors; and (c) Douglas Freeman made a fraudulent misrepresentation upon which the plaintiff relied to her detriment. We agree with her contentions as to Transamerica and, in part, to the motel corporation, but not as to Mr. Freeman.

Michael and Joan Thorstad were president and manager[2] respectively of Archway Motel, Inc., and were two of its three directors. The Thorstads wanted to purchase the Peace Arch Cafe in Blaine. Without any corporate authority, they listed the motel for sale through Douglas Freeman, a realtor, hoping to acquire funds with which to purchase the cafe. While Mr. Freeman did not effect a sale, he did interest Marion Kiniski in loaning $26,000 to the Thorstads. The loan was to be secured by a mortgage on the Archway Motel. For this, he received a finder's fee.

Mrs. Kiniski was aware there were prior encumbrances on the property. She had also been involved in numerous real estate transactions in the area. All of those transactions had been handled by Tideland Escrow Company, Inc., a corporation owned by Leonard and Beverly Serebrin, with Beverly Serebrin as its manager. The escrow instructions here indicate that the loan would not be made until a valid third mortgage could be obtained and a title insurance policy insuring the mortgage issued. The plaintiff deposited her cash in escrow and a preliminary title report was ordered from the local office of the Transamerica Title Insurance Company. The title company's preliminary report was issued on January 31, 1974, noting, in addition to the usual exceptions for taxes, that: (a) title was vested in Michael and Laura O'Flaherty, and was subject to a contract of sale listing the O'Flahertys as sellers and Robert W. and Pearl L. Munsen as purchasers; (b) the purchasers'

---

[2]Joan Thorstad had been secretary of the corporation prior to this transaction. Her mother, Enid Beharrell, was the third director of the corporation and its sole stockholder, but is not a party to this action.

interest in that contract was then held of record by the Archway Motel, Inc., a Washington corporation; (c) there existed a $35,000 mortgage with Archway Motel, Inc., as mortgagor, and Joseph Miller, as mortgagee, and lastly (e) the proposed mortgagees were Eugene and Marion Kiniski.

On February 1, 1974, Beverly Serebrin prepared a promissory note and mortgage in the amount of $26,000, naming Michael and Joan Thorstad as mortgagors and Eugene N. Kiniski and Marion K. Kiniski as mortgagees, subject to the contract of sale and mortgage noted above. The note and mortgage were executed by Michael and Joan Thorstad, not in any corporate capacity on behalf of the Archway Motel, Inc., but in their individual and community capacities. The mortgage contained a property description of the land upon which the motel was located. Mrs. Serebrin then issued a check for the amount of the mortgage, less escrow expenses and finder's fee, payable to the Archway Motel, Inc., and deposited that check in the motel's corporate bank account. The following day Joan Thorstad who, as manager of the motel and corporation, had the sole authority to issue checks on the corporate account, withdrew all but $1,000. She gave those funds to Michael Thorstad to purchase the Peace Arch Cafe. He also acquired a Class H liquor license for that cafe, issued in the name of the Archway Motel, Inc.

Mrs. Serebrin sent the mortgage to the local office of Transamerica Title Insurance Company. The title company recorded the mortgage on February 5, 1974. A mortgage title insurance policy was issued on February 6, 1974, at 8 a.m., in the amount of $26,000, for which the company received a premium of $149.50.

The promissory note required the Thorstads to pay interest at the rate of 12 percent per annum, in monthly payments beginning March 1, 1974, for 12 months, at which time the principal was to become due and payable. They made the March and April payments, but their check for the May payment was returned for insufficient funds. When

Mrs. Kiniski went to the real estate office of Douglas Freeman, she became aware for the first time that the motel was a corporation and not the private property of the Thorstads. In June 1974, apparently a new mortgage was executed by Michael Thorstad as president of the Archway Motel, Inc.; Joan Thorstad would not sign that document; however, it was recorded in June of 1974. Michael Thorstad was removed as president in July of 1974. Mrs. Kiniski brought this action against all parties who had any contact with this transaction. She brings this appeal as to the defendants against whom the court denied her recovery.

### TRANSAMERICA TITLE INSURANCE COMPANY

The plaintiff contends she has an insurance policy which covers this transaction and that there is a defect, not only in the execution of the instrument, but in the failure of the company to notify her that the Thorstads were not in the chain of record title. Transamerica contends without citing any authority that its policy, as a contract of indemnity, insured the fact that the title was vested as set forth therein and that all "defects, liens, encumbrances, and other matters which could affect the title with the exception of those items which the policy does not insure against, are correct." The company purports to rely completely upon the preliminary commitment. It contends the commitment obligated the company to insure according to the terms set forth therein and not according to the language of the policy, which was issued some 6 days later. We disagree and reverse as to this party.

The pertinent portions of the policy relate that Transamerica Title Insurance Company:

> does hereby insure the person or persons named in item 1 of Schedule A [Eugene N. Kiniski and Marion K. Kiniski, his wife] . . . as set forth in the conditions and stipulations, against loss or damage sustained by reason of:
> 1. Title to the estate, lien or interest defined in items 3 and 4 of Schedule A

[item 3 defines the Thorstads as the mortgagors and the Kiniskis as the mortgagees on a $26,000 mortgage dated February 1 and recorded under a given number on February 5, 1974; item 4 is a description of the motel property] being vested, at the date hereof, otherwise than as stated in item 2 of Schedule A;

[Michael O'Flaherty and Laura O'Flaherty, his wife, as holders of record title]

or

2. Any defect in, or lien or encumbrance on, said title existing at the date hereof, not shown in Schedule B;

[lists real and personal property taxes; mineral rights reservation; contract between O'Flaherty and Munsen; purchasers' interest now held of record in Archway Motel, Inc.; and mortgage between Archway Motel, Inc., and Joseph Miller]

or

3. Any defect in the execution of any instrument shown in item 3 of Schedule A, . . .

[the Thorstad–Kiniski mortgage]

■ Title insurance differs from the traditional insurance policy which is based on actuarial computations. Title insurance is a guaranty of the accuracy of a company search and record title on a specific property. Volume 52, L.A. County Bar Association Journal No. 1, p. 20 (Michael W. Ring, Esquire, July 1976).[3] However, it is still a contract, and as noted in *Morgan v. Prudential Ins. Co. of America*, 86 Wn.2d 432, 434–35, 545 P.2d 1193 (1976):

In construing the language of an insurance contract, the entire contract is to be construed together for the purpose of giving force and effect to each clause. A contract of insurance should be given a fair, reasonable, and sensible construction, consonant with the apparent object and intent of the parties, a construction such as would be given the contract by the average man purchasing insurance. *Ames v. Baker*, 68 Wn.2d 713, 415 P.2d 74 (1966).

---

[3]See also "The Title Industry—White Papers," Volume 1, Published by the American Land Title Association, an article entitled "The Nature of and Need for Title Insurance Services," pp. 4–6 (1976).

The contract should be given a practical and reasonable rather than a literal interpretation; it should not be given a strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms, or which would lead to an absurd conclusion, or render the policy nonsensical or ineffective.

(Citations omitted.) *Cf. Farmers Ins. Co. v. Miller,* 87 Wn.2d 70, 549 P.2d 9 (1976); *Witherspoon v. St. Paul Fire & Marine Ins. Co.,* 86 Wn.2d 641, 650, 548 P.2d 302 (1976); *Aetna Ins. Co. v. Kent,* 85 Wn.2d 942, 540 P.2d 1383 (1975); *Continental Volvo, Inc. v. Ross,* 17 Wn. App. 316, 562 P.2d 1002 (1977).

Mrs. Kiniski reasonably thought that the purpose for acquiring title insurance was to insure herself against the risk that a defect in the underlying title would invalidate her lien, leaving her as an unsecured creditor. That is what the policy stated it would insure against, *i.e.,* "Any defect in, or lien or encumbrance on, said title existing at the date hereof, not shown in Schedule B."

Transamerica contends that to exclude everyone not shown in the chain of title would be an onerous task. We agree, but believe such a contention to fall short of the issue. The preliminary commitment did not disclose the Thorstads in the chain of title. In all probability, Transamerica was unaware at that time who the mortgagor was, or had reason to believe it would be Archway Motel, Inc. Notwithstanding, sometime between the day it issued the preliminary commitment and the day it issued its policy, Transamerica had in its physical possession the very document sought to be insured, and executed that policy, not by or on behalf of anyone shown by the company's search of the public records as having any title interest, but by strangers to the record title their search disclosed. The company issued its policy the day after it recorded the mortgage whose defects it knew from actual notice.

We agree that this is not a situation in which the title search overlooked interests which were of public record. *Shotwell v. Transamerica Title Ins. Co.,* 16 Wn.

App. 627, 558 P.2d 1359 (1976), *review granted,* 88 Wn.2d 1014 (1977); *cf. Moe v. Transamerica Title Ins. Co.,* 21 Cal. App. 3d 289, 98 Cal. Rptr. 547 (1971). The title company had actual notice of the identity of the mortgagors, had its preliminary commitment before it, and thus, had a choice either to notify Mrs. Kiniski that the mortgagors appeared outside its search of the public records or not to issue the policy. The company did neither. If the company had inserted an exclusion of this mortgage from the policy, with the knowledge it had, that would have been unconscionable. There are undoubtedly situations where unrecorded interests are excluded by the language of the policy, but not under these facts. The title company is therefore liable on this policy.

The company contended, and the trial court apparently agreed, it should not be held liable because neither Mrs. Kiniski nor the escrow company relied on the preliminary commitment. Mrs. Kiniski undoubtedly knew that she was not obtaining a first mortgage on the premises, but she certainly was entitled to know the identity of the recorded title interests. They were disclosed by the preliminary commitment. She also sought, within the title insurance policy, assurance that the mortgage she received fell within those recorded interests and was validly executed. These are the very items the policy stated it covered as of 8 a.m. February 6, 1974. In fact, the mortgagors had no title interests; the company is deemed to have known that fact by reason of their search and physical possession of the document. They failed to disclose this fact in any manner to their insured and are thus liable on their contract.

■ Mrs. Kiniski seeks attorney's fees incurred in bringing this action, including the appeal. She is entitled to them. By its terms, the policy obligates Transamerica to defend any action against the title and further provides that the company will be liable for "the actual loss of the insured and costs which the Company is obligated to pay." The company should be no less contractually liable when its insured is required to seek a judgment against it than it

is to defend the action against other claims. We find, within the language of the policy, a right of this insured to collect attorney's fees in addition to her actual loss.

### ARCHWAY MOTEL, INC.

On the day of the mortgage transaction, Mrs. Kiniski transferred $26,000 to Mrs. Serebrin, the escrow agent, who made a check out to Archway Motel, Inc., for $24,307.02. That afternoon, Mrs. Serebrin deposited those funds in the corporate bank account. The next day Joan Thorstad withdrew all but $1,000 of that amount and gave the money to her husband; the remaining $1,000 was used to cover corporate overdrafts. The trial court entered judgment against the Archway Motel corporation for $1,000 plus interest at the legal rate. According to appellant, Archway has paid $1,000 plus 6 percent interest.

Appellant contends the corporation should be held liable on one of two theories: (1) the Thorstads were acting as officers and agents of the corporation, or, (2) the court should reform the note and mortgage since the corporation benefited from the transaction. Neither contention is applicable.

■ Corporate liability based on the apparent authority of its agents is premised upon the principal's knowledge or acquiescence in the conduct of its agents which has led third parties to rely upon their actions. It is a well–established rule that the apparent or ostensible authority of an agent can be inferred only from acts and conduct of the principal. *Lumber Mart Co. v. Buchanan,* 69 Wn.2d 658, 662, 419 P.2d 1002 (1966). The authority of an agent is not "apparent" merely because it looks so to the person with whom he deals. *Taylor v. Smith,* 13 Wn. App. 171, 177, 534 P.2d 39 (1975). The Thorstads signed all documents solely in their individual capacity. Although the corporation had purchased another cafe in 1973, Mrs. Kiniski was unaware of that transaction and therefore could not have relied on the past authorization of a similar transaction. Mrs. Kiniski made no inquiry into the ownership of the motel; she

assumed that because the Thorstads lived on the motel property and said they owned it that therefore they did. We find no apparent authority.

■ Mrs. Kiniski also contends that the court should have either (1) reformed the first mortgage, or, (2) enforced the second mortgage signed only by Michael Thorstad. The reformation of a contract is based upon the mutual mistake of the parties. The mistake on the part of one party alone is not relievable. *Wilson v. Westinghouse Elec. Corp.*, 85 Wn.2d 78, 84, 530 P.2d 298 (1975). *See also Thorsteinson v. Waters*, 65 Wn.2d 739, 399 P.2d 510 (1965). Reformation may be imposed if a corporation ratifies a transaction. *See Barnes v. Treece*, 15 Wn. App. 437, 549 P.2d 1152 (1976). Mrs. Beharrell, the sole stockholder and director, promptly disaffirmed the transaction as soon as she had learned of it in June 1974. There is no basis for reformation of the first mortgage.

At the time Michael Thorstad signed the second mortgage, all parties knew he had no authority to bind the corporation. His action can be viewed as an attempt to avoid his own personal liability. There was no corporate authorization for either the first or the second mortgage; both Mrs. Beharrell and Joan Thorstad refused to sign the second mortgage. The second mortgage had no legal effect.

While the verbatim report of proceedings and language in Mrs. Kiniski's brief speak of equitable and moral reasons for awarding judgment against this corporation, no mention of any such viable theory was made in the trial court nor authority cited at this level upon which to award such judgment. This court will not retry the case at this level.

■ Mrs. Kiniski contends that because $1,000 was retained and used by the corporation, the corporation should be liable for the amount of interest agreed to in the mortgage, *i.e.*, 12 percent. We agree with Mrs. Kiniski. Since the $1,000 was held by the corporation for over 2 years, there was sufficient ratification to hold the corporation liable for the amount of interest agreed upon. Acquie-

scence implies ratification. *See Barnes v. Treece, supra* at 444. While the agreed–upon interest rate of 12 percent was properly allowable to the date of judgment, a maximum of only 10 percent is allowable after the date of judgment. *American Linen Supply Co. v. Nursing Home Bldg. Corp.,* 15 Wn. App. 757, 551 P.2d 1038 (1976); RCW 4.56.110. The corporation, according to appellant, paid 6 percent interest. We therefore find the corporation liable for 12 percent interest to the date of judgment and 10 percent interest thereafter until the amount was paid.

## DOUGLAS FREEMAN d/b/a FREEMAN REALTY COMPANY

Douglas Freeman, a realtor, first met the Thorstads when they listed the motel for sale with him January 16, 1974. At that time Michael Thorstad told Freeman he preferred to mortgage the motel in order to raise money to buy a cafe. By January 30 Freeman had contacted Mrs. Kiniski and had drawn up a "pre–mortgage agreement" which the Thorstads and the Kiniskis signed. Freeman had no further involvement with the transaction.

Appellant contends the trial court erred in not finding Freeman liable on the grounds of fraud because Freeman was ignorant of the assertion that the Thorstads owned the motel. In order to find fraud, all of the nine elements of fraud must be met. *Morgan v. Irving,* 8 Wn. App. 354, 357, 506 P.2d 316 (1973).

At trial, there was conflicting evidence as to whether Mr. Freeman had documents in his possession which indicated that the motel was a corporation and not owned by the Thorstads. The court was not persuaded that at the time Mr. Freeman told Mrs. Kiniski of the loan he knew the motel was not owned by the Thorstads.

█ When there is substantial evidence to support a trial court's finding, its determination on conflicting evidence is decisive and an appellate court will not substitute its findings for those of the trial court. *Lumber Mart Co. v.*

*Buchanan, supra* at 663. Here it appears there was substantial if conflicting evidence upon which the trial court made its findings and its subsequent dismissal.

The judgment is affirmed as to Douglas Freeman, d/b/a Freeman Realty; the judgment is affirmed as to the Archway Motel, Inc., except insofar as this opinion modifies that judgment awarding plaintiff 12 percent interest on the $1,000 retained by the corporation up to the time of judgment and 10 percent thereafter until paid. The judgment dismissing Transamerica Title Insurance Company is reversed and the matter remanded for entry of judgment against Transamerica Title Insurance Company in the amount of the actual loss sustained by Mrs. Kiniski and determination of reasonable attorney's fees and costs incurred in the course of the trial and appeal of this matter.

WILLIAMS and RINGOLD, JJ., concur.

Reconsideration denied November 16, 1978.

Review denied by Supreme Court March 16, 1979.