[No. 10117–3–II. Division Two. April 15, 1988.]

TUMWATER STATE BANK, *Respondent,* v. COMMONWEALTH LAND TITLE INSURANCE COMPANY OF PHILADELPHIA, *Appellant.*

*William T. Lynn* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* for appellant.

*Joanne Henry* and *Johnson, Lane & Crawford,* for respondent.

PETRICH, J.—Commonwealth Land Title Insurance Company appeals the trial court's award of judgment to Tumwater State Bank, allowing recovery under a title insurance policy. On appeal, two issues are raised. First, whether by an earlier awareness of a then existing lien, the insured has assumed or agreed to that lien which was not specifically excepted from coverage by the title insurance policy; second, whether a mistake in failing to exclude from coverage a recorded lien, of which the insured at an earlier time had been aware, justified reformation of a title insurance policy.

We find no error and, therefore, affirm the trial court's judgment.

In March 1980, Tumwater State Bank made a commercial loan of $50,000 to Clayton and Linda Burkhart, secured in part by a deed of trust on certain real property located in Thurston County. At the time of this loan, two prior deeds of trust were of record on the same property in favor of Heritage Federal Savings and Loan Association. Tumwater had knowledge of the existence of these prior deeds of trust. The loan was renewed in January 1981 in the amount of $35,970.20. A new deed of trust was issued in favor of Tumwater. Tumwater then obtained a lender's policy of title insurance from Safeco Title Insurance Company which showed the two prior Heritage deeds of trust still of record.

In June of 1981, Tumwater was acquired by Western Community Bank. The new management of the bank performed a routine "due diligence" review of the Burkhart loan file in the fall of 1981. The Safeco Title Insurance policy issued at the time of the loan renewal was not found in the loan file during the review. To protect its position on the loan, Tumwater ordered a mortgagee's policy of title insurance from Commonwealth. The Commonwealth policy dated October 4, 1981, showed no encumbrances on the Burkhart property prior to the Tumwater deeds of trust of March 1980 and January 1981. However, on that date the two Heritage deeds of trust were still in effect and of record.

The Burkharts subsequently defaulted on their prior loan obligations to Heritage, which prompted Heritage to commence nonjudicial foreclosure proceedings on its deeds of trust. Heritage purchased the property at a trustee's sale on March 15, 1985, for the amount of the indebtedness then owing to Heritage. This sale effectively extinguished Tumwater's security interest in the Burkhart property.

Tumwater then sued Commonwealth on the October 1981 title insurance policy for its loss resulting from the priority of the Heritage liens which had not been listed as

exceptions from coverage in the policy. Commonwealth denied coverage and counterclaimed for reformation.

At trial, the court found and concluded that at the time of the issuance of the Commonwealth Land Title Insurance policy the bank had no actual knowledge of the then viability of the Heritage deeds of trust and was entitled to rely upon the provisions of the policy. The trial court dismissed Commonwealth's counterclaim for reformation of the title policy, finding and concluding that the omission of the Heritage liens was made unilaterally by Commonwealth, and was not the result of a mutual mistake. The court entered a judgment in favor of Tumwater in the amount of $22,660.07, plus costs and attorney's fees pursuant to the terms of the title insurance policy. Commonwealth now appeals this judgment.

### Exceptions to Insurance Coverage

Commonwealth assigns error to the trial court's interpretation of the exclusion clause of the policy, which excludes coverage for any encumbrances "assumed or agreed to by the insured." Schedule B of the Commonwealth Land Title Insurance policy provides in relevant part:

> This policy does not insure against loss or damage, nor against costs, attorney's fees or expenses, any or all of which arise by reason of the following: . . .
>
> No. 9. Defects, liens, *encumbrances,* adverse claims, or other matters (a) created, suffered, *assumed or agreed to by the insured claimant*; . . . (c) resulting in no loss or damage to the insured claimant; . . .

(Italics ours.) Commonwealth argues that Tumwater is not entitled to recover under this exclusion since it had knowledge of the Heritage deeds at the time of the loan and the refinancing. According to Commonwealth, Tumwater had assumed or agreed to these encumbrances and would therefore not be protected from them under the policy.

Washington courts have not yet construed the "assumed or agreed to" exclusion found in most title insurance policies. Therefore, both parties have cited case law from other jurisdictions. In support of the proposition that

the title insurer has no liability to the insured under this circumstance, Commonwealth relies on a case from the Eighth Circuit Court of Appeals. In *First Nat'l Bank v. Fidelity Nat'l Title Ins. Co.,* 572 F.2d 155 (8th Cir. 1978), a short term lender on a construction project brought an action against a title insurer seeking a declaratory judgment that the insurer was liable for losses caused through the combined effect of the borrower's fault and the existence of purchase money mortgages on the subject property which were prior in right to the lender's mortgage. The lender argued that because it had been insured as a first lien-holder, the title insurer should bear monetary losses caused by encumbrances of record that were prior in right to the lender's mortgage. The court held that the title insurer had the burden of proving that the lender agreed to exclude the prior mortgages from coverage under a "created, suffered, assumed or agreed to" exclusionary clause. The lender's mere knowledge that prior encumbrances existed would not absolve the insurer from liability for them unless the insurer also established by preponderance of the evidence that the lender agreed that its mortgage would occupy a secondary position to prior purchase money mortgages. *First National,* 572 F.2d at 162–63. We find the rule in *First National* to be persuasive and consistent with Washington law on title insurance. As in *First National,* the Washington Supreme Court has held, that in construing title policies in accordance with general insurance principles, an insured's knowledge of record defects or negligence in failing to discover them does not act to bar coverage. *Shotwell v. Transamerica Title Ins. Co.,* 91 Wn.2d 161, 170, 588 P.2d 208 (1978). Since something more than knowledge on the part of the insured is necessary to bar coverage, we conclude that the burden of proof is appropriately with the insurer to establish that the insured agreed to or assumed prior encumbrances. To hold otherwise would allow the insurer to circumvent the rule in *Shotwell* with regard to the "assumed or agreed to" exclusion.

In the present case, Commonwealth has failed to establish that Tumwater had agreed that its mortgage would occupy a secondary position to the Heritage deeds of trust. Commonwealth, in attempting to establish that Tumwater had agreed to the encumbrance, relied principally on Tumwater's prior knowledge of the Heritage deeds of trust. While it is true that Tumwater had knowledge of the Heritage loans at the time of its loan to Burkhart, under the rule in *Shotwell,* this is not enough to bar coverage. Given that the status of title is not static, the court should be concerned with the knowledge of Tumwater at the issuance of the Commonwealth policy. This knowledge or intent to agree to the prior encumbrances, if any, has not been established by Commonwealth.

Commonwealth further argues that Tumwater did not rely on the title insurance policy in making the loans, thus barring the claim. Commonwealth cites *Lawyers Title Ins. Corp. v. Research Loan & Inv. Corp.,* 361 F.2d 764 (8th Cir. 1966), for the proposition that the insured must in some way rely on the insurer's title policy. In *Lawyers Title,* the insured accepted the property in question subject to all mortgages and liens against it without recourse against the grantor prior to acquiring the title insurance policy. The insured then brought action to recover amounts that it expended to clear prior encumbrances that had been omitted from its title policy. The court held that since the insured assumed by deed all existing obligations, and did not rely on the title insurer to advise it of the encumbrances, the insured had assumed or agreed to these prior encumbrances. *Lawyers Title,* 361 F.2d at 769. Despite the fact–specific holding in *Lawyers Title,* we do not accept the proposition that reliance is necessary to recover under a title insurance policy.

Although reliance per se is not a necessary element for recovery under a title insurance policy, it appears that Tumwater did in fact rely upon Commonwealth's policy in this case. Reliance on a title insurance policy encompasses more than the initial determination to buy or loan money

on a piece of property. In addition to using the policy to make the initial loan determination, a commercial lender also tailors its continuing relationship with the debtor according to the protection afforded by the policy. In this case, Tumwater took a hands off approach with the Burkharts on the assumption that it was protected by the Commonwealth policy. Such reliance on the policy meant that Tumwater lost its opportunity to intervene into the Burkharts' failing business and possibly minimize its losses. Therefore, there has been reliance on the part of Tumwater.

We hold that it has not been established by a preponderance of the evidence, as used in *First National,* that Tumwater assumed or agreed to the Heritage encumbrances. Therefore, the trial court should be affirmed.

### REFORMATION OF THE TITLE INSURANCE POLICY

 Commonwealth argues that the trial court should have reformed the title insurance policy on the grounds that there had been a mutual mistake by both parties. Where parties to a transaction have an identical intention as to the terms to be embodied in a proposed agreement and the writing executed by them is materially at variance with that intention, a court of equity will reform the writings so that it will truly express the intention of the parties. *Thorsteinson v. Waters,* 65 Wn.2d 739, 744–45, 399 P.2d 510 (1965).

> The party seeking reformation has the burden of proving the mutual mistake and must show clearly that the parties to the transaction have an identical intention as to the terms to be embodied in the deed or instrument and that the deed or instrument is materially at variance with that identical intention.

*Keierleber v. Botting,* 77 Wn.2d 711, 715–16, 466 P.2d 141 (1970).

In the present case, Commonwealth has failed to meet its burden proving mutual mistake. As mentioned previously, Commonwealth did not establish Tumwater's intent at the

time of the issuance of the title insurance policy. Commonwealth argues that because of its prior knowledge regarding the Heritage deeds, Tumwater's intent was to be in third position. However, this intention was not established either through the testimony of the bank's officer at trial or the bank's behavior after the issuance of the policy. Therefore, since Commonwealth failed to establish the identical intention of itself and Tumwater, reformation would be inappropriate in this case.

Commonwealth further argues that Tumwater engaged in inequitable conduct by failing to protect itself after it learned that the title policy was in error. According to Commonwealth, this conduct should serve as grounds for reformation or as a bar to recovery under the terms of the policy. Although the insurer and the insured each have the option of adopting defensive measures to protect an interest in a piece of property, neither side is under a duty to do so. *See generally Securities Serv., Inc. v. Transamerica Title Ins. Co.,* 20 Wn. App. 664, 674, 583 P.2d 1217, *review denied,* 91 Wn.2d 1008 (1978). Thus, Tumwater's refusal to take defensive actions was appropriate behavior and did not serve as grounds for reformation of the insurance policy.

Tumwater seeks an award of attorney's fees for services rendered on appeal under the terms of the title insurance policy and *Kiniski v. Archway Motel, Inc.,* 21 Wn. App. 555, 586 P.2d 502 (1978), *review denied,* 91 Wn.2d 1023 (1971). In *Kiniski,* the court ruled that when a title insurance policy holder is forced to seek damages from a title company for title defects, he is entitled to compensation for attorney's fees under a title insurance policy which ensures against actual loss and costs incurred by an insured as a result of such defects. *Kiniski,* 21 Wn. App. at 562–63. Since Tumwater's policy has a similar provision, we award attorney's fees on appeal in the amount of $5,000 to Tumwater.

The judgment is affirmed.

ALEXANDER, J., concurs.

REED, C.J. (dissenting)—I believe the majority has misconstrued the exclusionary language of Commonwealth's title insurance policy. Therefore, I dissent.

The policy Commonwealth provided for the Tumwater State Bank specifically stated that Commonwealth would not be liable for "Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant . . ." There is no question that at the time Tumwater accepted the original deed of trust in 1980, and at the time it renewed the loan in early 1981, it knew of the Heritage liens. Later in 1981, when the new owners sought a second title insurance policy, they were also aware that those liens had existed 6 months earlier.[1] Of course, as the majority has noted, knowledge on the part of the insured is not enough to bar coverage *if the encumbrance is covered by the policy. Lawyers Title Ins. Corp. v. Research Loan & Inv. Corp.*, 361 F.2d 764, 767–68 (8th Cir. 1966). *See also Shotwell v. Transamerica Title Ins. Co.*, 91 Wn.2d 161, 588 P.2d 208 (1978).

However, the record here clearly demonstrates not only knowledge, but acceptance of those liens. Tumwater's chairman of the board, Bill Hamilton, testified that the bank had been willing to accept a junior lienor's position because it was given substantial additional collateral in the Burkharts' business assets. Tumwater's admitted acceptance of these encumbrances brings it squarely under the policy exclusion.

In view of this fact, whether Tumwater knew the senior liens still existed at the time it requested the Commonwealth title policy is irrelevant. Generally speaking, the parties to a title insurance policy are free to define what

---

[1]Tumwater admitted, both at the trial and in its appellate brief, that it had acquired actual knowledge of these liens from the loan file maintained by its former owners.

losses or encumbrances they intend to cover. *Lawyers Title Ins. Corp. v. Research Loan & Inv. Corp.*, 361 F.2d at 768. These parties specifically agreed that encumbrances agreed to by Tumwater were not covered. Tumwater cannot now use its own failure to keep tabs on the Heritage liens to invoke coverage it never had.

Neither can this clear acceptance of the prior encumbrances be ignored because it was not acknowledged or expressed to the insurer. There is no such requirement, either in the policy or in case law. In fact, the courts that have construed such exclusions have held that such words as "accepted," "assumed," "agreed to" in exclusionary clauses like the one before us refer to the transaction between grantor and grantee, not insurer and insured. *See Lawyers Title Ins. Corp. v. Research Loan & Inv. Corp., supra; Rudolph v. Title & Trust Co.*, 402 So. 2d 1275 (Fla. Dist. Ct. App. 1981); *Malkin v. Realty Title Ins. Co.*, 244 Md. 112, 223 A.2d 155 (1966); *First Nat'l Bank & Trust Co. v. New York Title Ins. Co.*, 171 Misc. 854, 12 N.Y.S.2d 703 (1939).[2]

This rule is not inconsistent with the result in *First Nat'l Bank v. Fidelity Nat'l Title Ins. Co.*, 572 F.2d 155 (8th Cir. 1978), cited by the majority. In that case, there were allegations and evidence of a specific agreement between the insured and the insurer, by which the title company agreed to insure a first lien status, even though it knew First National Bank did not possess one. No collateral agreement is alleged here.

Finally, even if the Heritage liens had been covered by the policy, I cannot agree that Tumwater is entitled to damages. The bank is entitled to recover only for actual loss *arising from the causes insured against. See Miebach*

---

[2]In deciding that the mortgagee bank had not "agreed to" the invalidating of its mortgage by a bankruptcy court, the New York court observed, "The words 'assumed or agreed to' had reference to some particular defect or encumbrance assumed or agreed to by the bank by the title conveyance to it or by some collateral agreement made by the bank with reference to that specific subject–matter." *First Nat'l Bank & Trust Co. v. New York Title Ins. Co.*, at 858.

*v. Safeco Title Ins. Co.,* 49 Wn. App. 451, 743 P.2d 845 (1987); *Securities Serv., Inc. v. Transamerica Title Ins. Co.,* 20 Wn. App. 664, 669–70, 583 P.2d 1217, *review denied,* 91 Wn.2d 1008 (1978).[3] It sought and acquired only a third place lienor's position, relying on other assets for security. Its investment was lost because the IRS seized those assets. Commonwealth did not insure that additional collateral and should not be held to answer for it here.

I would therefore reverse the judgment, and award Commonwealth's attorney's fees for services both in the trial court and on appeal.

---

[3]While there continues to be some disagreement among courts regarding the nature of title insurance, the distinctions are immaterial here. Whether they define the policy as a contract of indemnity or a warranty, the courts generally have agreed that recovery can be no greater than the actual loss resulting from defects insured against. *See also First Commerce Realty Investors v. Peninsular Title Ins. Co.,* 355 So. 2d 510 (Fla. Dist. Ct. App. 1978); *Drilling Serv. Co. v. Baebler,* 484 S.W.2d 1 (Mo. 1972); *L. Smirlock Realty Corp. v. Title Guar. Co.,* 97 A.D.2d 208, 469 N.Y.S.2d 415 (1983). In *Securities Serv., Inc. v. Transamerica Title Ins. Co., supra,* and *Miebach v. Safeco Title Ins. Co., supra,* the measure of damages was different because the kinds of losses were different.